STATE OF NORTH CAROLINA v. JAMES W. BROWN, JR.

No. 121

(Filed 15 July 1980)

1. **Homicide § 15.5— murder of stepchild—cause of death—expert opinion evidence properly admitted**

   In a prosecution of defendant for the murder of his 18 month old step-daughter, the trial court did not err in admitting the testimony of three doctors who opined that decedent's injury was probably not caused by a fall down a flight of stairs, since all three medical experts were in a better position to have an opinion on the cause of deceased's injuries than the jury because of their medical training and their experience in observing and treating skull fractures; the witnesses stated only their opinions as to the possibilities, not the certainties, of the cause of deceased's injuries; and none of the three experts made any statement as to their opinion of defendant's guilt or innocence.

2. **Homicide § 30.2— murder of stepchild—instruction on manslaughter not required**

   In a prosecution of defendant for the murder of his 18 month old step-daughter, the trial court did not err in failing to charge the jury on voluntary manslaughter since evidence for the State tended to show that defendant had killed the child—whom he termed "the little s.o.b."—with malice, while defendant's only explanation of deceased's fatal injury was that she accidentally and by herself fell down a flight of stairs, and there was therefore no evidence of voluntary manslaughter.

ON appeal from judgment of *Allsbrook, Judge*, entered at the October 1979 Session of Superior Court, SAMPSON County, sentencing defendant to life imprisonment for conviction of second degree murder.

Defendant was charged in an indictment, proper in form, with the murder of Amanda Beth Binks, his eighteen-month-old stepdaughter. He pled not guilty.

Evidence for the State tended to show that deceased was brought to the Sampson County Memorial Hospital Emergency Room on Sunday afternoon, 19 August 1979, in critical condition from a head injury. She was immediately transferred to Cape Fear Valley Hospital, where she was operated on for a badly fractured skull. She died 25 August 1979 from her injuries.

Defendant told hospital personnel that the child had been injured by a fall down a flight of wooden stairs in their home. Defendant had been alone with the deceased at the time of the accident.

Three doctors, accepted by the court as expert witnesses, testified for the State that in their opinion the extent, severity and location of the child's injuries were inconsistent with a fall down a flight of wooden stairs.

The State introduced into evidence a letter defendant wrote while in jail to his wife, who was the mother of the deceased child. In the letter defendant told his wife to get a friend to say that the friend had been present with defendant and had seen the child fall down the stairs. The State also presented the testimony of a jail cook who stated that the defendant had told the cook he had killed his stepdaughter.

Defendant presented a doctor who testified that in his opinion the injury to the deceased could have been caused by a fall down the stairs. Defendant also presented evidence of a civil engineer who testified the stairs in question were steep, of varying heights and widths and nonconforming in some respects with the North Carolina Building Code.

The jury returned a verdict of guilty of second degree murder. Defendant was sentenced to life in prison, from which sentence he now appeals.

*Attorney General Rufus L. Edmisten, by Assistant Attorney General Elizabeth C. Bunting, for the State.*

*Joseph B. Chambliss for defendant.*

CARLTON, Justice.

Defendant presents four arguments. We find no error and affirm.

[1] Defendant first asserts that the trial court improperly admitted the testimony of three doctors who opined that the decedent's injury was probably not caused by a fall down a flight of stairs. Such testimony, defendant argues, invaded the province of the jury and relieved the State of its burden of proof.

We disagree. The controlling case is *State v. Wilkerson*, 295 N.C. 559, 247 S.E. 2d 905 (1978). There, Justice Exum, speaking for the Court, delineated the circumstances under which expert medical testimony is permissible. Such testimony is properly admitted if

(1) the witness because of his expertise is in a better position to have an opinion on the subject than the trier of fact,

(2) the witness testifies only that an event *could* or *might* have caused an injury but does not testify to the conclusion that the event did in fact cause the injury, unless his expertise leads him to an unmistakable conclusion[1] and

(3) the witness does not express an opinion as to the defendant's guilt or innocence.

It is clear that the expert testimony the State presented at defendant's trial conformed to the *State v. Wilkerson* criteria.

First, all three medical experts were in a better position to have an opinion on the cause of deceased's injuries than the jury because of their medical training and their experience in observing and treating skull fractures. Dr. Keranen, the neurosurgeon who operated on the deceased, testified that he had been Chief Neurosurgeon at the Cape Fear Valley Hospital for ten years. Based on his observation of the extent and depth of the deceased's skull fracture, as he observed that fracture during surgery, he opined that "the child died from tremendous brain injury resulting from one blow of tremendous force to the right side of the head." In his opinion it was possible *but remote* that the injury was caused by a fall down a flight of wooden stairs. He based his opinion on the extent and severity of the child's injuries and the fact that she did not have the marks, bruises and abrasions associated with a fall down a flight of stairs.

---

1. *Mann v. Virginia Dare Transportation Co.*, 283 N.C. 734, 198 S.E. 2d 558 (1973).

Dr. Jerome Tift, pathologist at North Carolina Memorial Hospital in Chapel Hill, performed the autopsy on the deceased. In his opinion the deceased's injuries were caused by blunt trauma to the right side of the head, injuries incompatible with a fall down a flight of stairs. He, too, based this opinion on the location and severity of the skull fracture. On cross-examination, however, Dr. Tift testified that it was not impossible that the injury could have been caused by a fall down a flight of stairs.

Dr. Page Hudson, Chief Medical Examiner for the State of North Carolina who was present at the autopsy of deceased, testified that deceased died from blunt force injury to the right side of her head. In his opinion the injury could not have been caused by a fall down a flight of stairs. He based this opinion on his past experience with various types of blunt force injuries to the skull, including injuries caused by stair falls. On cross-examination he stated that he did not believe a 23-pound, eighteen-month-old infant could develop the speed or momentum to receive an injury of this sort while falling down stairs. In his opinion, it would have taken upwards of 100 pounds per square inch of pressure to produce the deceased's injuries.

Each of these experts explained the medical inferences arising from the location, severity and extent of the focal point and the fracture lines of deceased's skull injury. That their opinions, to a person, drew inferences from medical facts which were inconsistent with defendant's explanation of the child's injury in no way undercuts the validity of their testimony. This Court has long allowed a medical expert to testify as to the nature of the instrument producing a particular injury when that expert's training and experience put him in a better position to draw medical inferences from facts than a layman jury. *Cf. State v. Wilcox*, 132 N.C. 1120, 44 S.E. 625 (1903) (doctor testified victim's death caused by blow by blunt instrument and not by drowning). *See also State v. Monk*, 291 N.C. 37, 229 S.E. 2d 163 (1976); *State v. Messer*, 192 N.C. 80, 133 S.E. 404 (1926). The average layman, lacking the training and experience these experts had in treating and observing skull fractures, could not, unaided, have drawn the necessary medical inferences from the evidence presented to them. Clearly the evidence here met the traditional test compelling expert testimony: "[the] opinion required expert skill or knowledge in the medical or pathologic field about which a person

of ordinary experience would not be capable of satisfactory conclusions, unaided by expert information from one learned in the medical profession." *State v. Powell*, 238 N.C. 527, 530, 78 S.E. 2d 248, 250 (1953). The expert testimony did not "invade the province of the jury."

Secondly, these witnesses stated only their opinions as to the probabilities, not the certainties, of the cause of deceased's injuries. All of them qualified these opinions by explaining the type of fall down a flight of stairs they envisioned the child suffering, and two of them expressly stated that the deceased's head injuries could possibly have resulted from a fall down the stairs.

In this respect, the testimony of these experts was much different from that disallowed by this Court in *Patrick v. Treadwell*, 222 N.C. 1, 21 S.E. 2d 818 (1942). There the expert testified that a second fracture of plaintiff's previously broken arm had *in fact* been caused by a car accident when there was no medical certainty this was so. Here, all three experts carefully limited their remarks to the probability that the deceased's injuries had been caused by a fall. As such, they did not violate the *Patrick v. Treadwell* medical certainty prohibition.

Finally, none of these three experts made any statement as to their opinion of defendant's guilt or innocence. Their testimony clearly met the criteria of *State v. Wilkerson, supra*, and was properly admitted.

[2] Defendant also assigns as error the trial court's failure to charge the jury on voluntary manslaughter.

Murder in the second degree, the crime of which defendant was convicted, is the unlawful killing of a human being with malice and without premeditation and deliberation. *State v. Montague*, 298 N.C. 752, 259 S.E. 2d 899 (1979).

Voluntary manslaughter is "the unlawful killing of a human being without malice, express or implied, and without premeditation or deliberation." *State v. Wynn*, 278 N.C. 513, 518, 180 S.E. 2d 135, 139 (1971), and is a lesser included offense of murder, *State v. Montague, supra*. Defendant, of course, is entitled to have the lesser included offense submitted to the jury under the proper instruction but only when there is evidence to support that

lesser included offense. *State v. Duboise*, 279 N.C. 73, 181 S.E. 2d 393 (1971).

Here evidence of the lesser included offense of voluntary manslaughter is totally lacking. Defendant's only explanation of deceased's fatal injury was that deceased accidentally and by herself fell down a flight of stairs. Evidence for the State on the other hand tended to show that defendant had killed the child — whom he termed "the little s.o.b."—with malice. Neither view of the evidence, the State's nor the defendant's, tended to show defendant hurt the child without malice. Indeed, evidence of a commonly asserted circumstance of voluntary manslaughter — killing while under the influence of passion or killing while "in the heat of blood" produced by adequate provocation, *State v. Montague, supra; State v. Wynn, supra*—is totally absent from both defendant's and State's version of the facts. Where the evidence tends to show, as it does here, that the defendant committed the crime charged and where there is no evidence of a lesser included offense, the trial court is correct in not charging on the lesser included offense. *State v. Redfern*, 291 N.C. 319, 230 S.E. 2d 152 (1976). In this assignment we find no error.

Defendant also argues that the trial court erred when it denied his motion to dismiss the case against him and when it denied his motion to set aside the verdict. We have carefully considered these further assignments and find no error. Defendant had a fair trial, free from prejudicial error.

No error.