STATE OF NORTH CAROLINA v. JOSEPH DANIEL KEEN, JR.

No. 59A83

(Filed 9 August 1983)

**Criminal Law § 50.1— expert testimony—unresponsive answer—failure to strike prejudicial error**

The trial court committed prejudicial error in failing to strike the answer of a psychiatrist in which the psychiatrist stated his opinion but failed to state his opinion in could or might terms. The psychiatrist was asked for his opinion of whether the victim "was fantasizing in any manner in his account of" how the first-degree sexual offense for which defendant was being tried occurred. Instead of answering the question, the witness stated his opinion "that an attack occurred on [the victim]; that this was a reality." G.S. 8-58.13.

APPEAL by defendant from *Small, Judge,* at the 30 August 1982 Criminal Session of Lenoir County Superior Court.

Upon a plea of not guilty defendant was tried on a bill of indictment charging him with a first-degree sexual offense on James B. Langley, Jr. Evidence presented by the State is summarized, in pertinent part, as follows:

On 29 April 1982 James B. Langley, Jr. (Langley) was 14 years old. He resided on Mewborn Avenue in Kinston with his mother, his father and his 17-year-old sister. The family had resided at this address for four years. Langley was approximately six feet tall, weighed about 200 pounds, and was in the ninth grade in school where he played trumpet in the school band and wrestled in the heavyweight division on the school wrestling team.

During the four years the Langleys resided on Mewborn Avenue, defendant and his wife lived next door. The two families became good friends and a close friendship developed between Langley and defendant. Langley and defendant joked and played pool and cribbage together. Defendant owned and played an organ and he and Langley would often get together with defendant playing his organ and Langley playing his trumpet.

On Thursday, 29 April 1982, defendant's wife was in Charlotte visiting their son. Around 9:00 p.m. defendant called Langley on the telephone and invited Langley "to come over and play some cribbage." Langley agreed to do so and at about 9:30 went to defendant's home, sat down on a sofa and started setting up the cribbage board and cards. Defendant brought Langley a soft drink and himself a beer. During the next 35 minutes the two of them played four or five games of cribbage and defendant consumed six or seven beers. Thereafter they went to the den to watch television.

After entering the den they sat at opposite ends of a couch. A short while later defendant removed a stick from under the couch. He then moved closer to Langley, holding the stick in his hand. Thereafter, defendant took Langley's hand and put it between defendant's legs. When Langley jumped up and protested, defendant stood up, pushed Langley down and struck the couch with the stick. Defendant told Langley that if he did not do what he told him to, he would kill Langley and his family. He also related certain other terrible things that he would do to Langley's sister and mother. When Langley protested and

threatened to leave, defendant shook the stick at him and eventually with the stick pressed against Langley's back, marched him to a bedroom. In the bedroom, defendant forced Langley to commit fellatio on him.

Thereafter, Langley returned to his home and later that night told his parents what had happened. He went to school the next day but became upset and was crying. After telling a teacher that he had been raped, she took him to the county mental health center. Later he was taken by his parents to Pitt Memorial Hospital where he remained eight days under the observation and treatment of Dr. J. D. Danoff.

Evidence presented by defendant is summarized, in pertinent part, as follows:

At the time in question, defendant was 58 years old, was five feet ten inches tall and weighed about 160 pounds. He had lived at the Mewborn Avenue address for 20 years with his wife to whom he had been married for 37 years. They had two sons, ages 25 and 35. The older son, Jerry, lived in Charlotte with his wife and two children. The younger son lived in New York. Defendant was employed at a local automobile dealership as a parts manager.

On the day in question defendant worked as usual. At around 9:00 o'clock that evening, as he was at home watching television and reading a newspaper, Langley called and expressed his desire to play cribbage. Defendant agreed to play and Langley entered the house at about 9:15. After Langley arrived, defendant got a club soda for Langley and a beer for himself. They proceeded to play cribbage for some period of time and then went into the den to watch television.

As they sat on a couch, Langley put his hand on defendant's leg and asked defendant if he wanted him (Langley) to "play with it." Defendant removed Langley's hand and said "of course not." Thereafter, defendant said that he was going to bed and told Langley to turn out the lights when he left. Defendant then went to his bedroom, removed his jeans and got into bed. Immediately, Langley entered the room and asked defendant if he was playing with himself. Defendant told him that he was not. Langley then sat down on the edge of the bed, put his hand in defendant's

underwear and grabbed defendant's penis. Shocked at Langley's conduct, defendant said, "James, I can't do that." Langley then said that he was in trouble and that defendant would tell his parents. Defendant suggested that Langley should go home, after which Langley hurriedly left the house.

Defendant presented numerous character witnesses. Other testimony pertinent to the question raised on appeal will be reviewed in the opinion.

The jury returned a verdict finding defendant guilty of first-degree sexual offense. From a judgment ordering that defendant be imprisoned for "the remainder of his natural life," defendant appealed to this Court pursuant to G.S. 7A-27(a).

*Rufus L. Edmisten, Attorney General, by Daniel F. McLawhorn, Assistant Attorney General, for the State.*

*Tharrington, Smith & Hargrove, by Roger W. Smith and Mark J. Prak, for defendant-appellant.*

BRANCH, Chief Justice.

By his sole assignment of error defendant contends the trial court committed prejudicial error in failing to strike certain testimony of Dr. J. D. Danoff. We find merit in this assignment and hold that defendant is entitled to a new trial.

Dr. Danoff, a professor in the Department of Psychiatry at East Carolina University School of Medicine, who observed and treated Langley in the Pitt Memorial Hospital for approximately eight days, testified as a witness for the State. It was stipulated that Dr. Danoff was an expert "in the general field of psychiatry with a specialty in the area of adolescent psychiatry." Among other things, Danoff testified that while Langley was in the hospital, he was in an acute anxiety state, was suicidal, angry and hostile. Danoff further testified that emotions commonly associated with the type of incident described by Langley included anxiety, anger, shame, guilt and feelings of worthlessness.

Defendant's assignment of error relates to the following questions, answers and rulings of the trial court:

Q. Doctor Danoff, do you have an opinion based upon your medical training and experience as to whether or not James

was fantasizing in any manner in his account of this situation?

Objection.

Court: Overruled; you may answer.

A. Yes, I do.

Court: The answer to that question is yes or no; do you have an opinion.

A. Yes, I do.

Q. What is that opinion?

A. That an attack occurred on him; that this was reality.

Motion to strike.

Court: Motion denied.

Dr. Danoff's answer was not responsive to the question asked by the prosecutor. If an unresponsive answer produces irrelevant or incompetent evidence, the evidence should be stricken and withdrawn from the jury. *See State v. Ferguson*, 280 N.C. 95, 185 S.E. 2d 119 (1971). Dr. Danoff was asked for his opinion whether Langley "was fantasizing in any manner in his account of this situation." Instead of answering the question, the witness stated his opinion "that an attack occurred on [Langley]; that this was a reality."

The evidence provided in the answer was incompetent. G.S. 8-58.13 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion.

We think the most reasonable interpretation of the answer given by Dr. Danoff is that, in his opinion, Langley had been "attacked" and that this was a "reality." In so answering, the witness went beyond the point of *assisting* the jury in determining a fact in issue. He, in effect, expressed an opinion as to the guilt of defendant.

In *State v. Brown*, 300 N.C. 731, 733, 268 S.E. 2d 201, 203 (1980), Justice Carlton, speaking for this Court and relying on *State v. Wilkerson*, 295 N.C. 559, 247 S.E. 2d 905 (1978), an opinion by Justice Exum, said:

[Expert] testimony is properly admitted if

(1) the witness because of his expertise is in a better position to have an opinion on the subject than the trier of fact,

(2) the witness testifies only that an event *could* or *might* have caused an injury but does not testify to the conclusion that the event did in fact cause the injury, unless his expertise leads him to an unmistakable conclusion and

(3) the witness does not express an opinion as to the defendant's guilt or innocence. [Footnote omitted.]

In applying the criteria set forth in *Brown* and quoted above, criteria (1) was unquestionably met since the parties stipulated as to Dr. Danoff's expertise.

It is clear that the witness exceeded criteria (2). He did not testify that Langley's mental state was consistent with that of one who had been sexually attacked, or that an attack as described by Langley *could* or *might* have caused his mental state. On the contrary, the witness stated that in his opinion such an attack had been committed on Langley and that "this was reality."

Our conclusion that the witness exceeded criteria (2) in instant case is further supported by *Patrick v. Treadwell*, 222 N.C. 1, 21 S.E. 2d 818 (1942). While *Patrick* was a civil case involving a physical injury, we think the situation there presented is analogous to the case at bar. In *Patrick*, the plaintiff, a child, sought to recover damages for alleged injuries resulting from a collision of two automobiles. A short time prior to the collision the child's arm had been broken and set in a cast. It was alleged that in the collision the child was thrown from the seat, her cast was broken, and that fragments of bone were knocked out of place, resulting in permanent injury. This Court held that it was error to permit a doctor to state his opinion that the collision in question caused the fragment of bone to be knocked out of place, or to testify, "I know the accident did it."

We also think that under the evidence in this case, criteria (3) was violated. To find defendant guilty, it was incumbent on the State to prove, and the jury to find, that a sexual offense was committed on Langley and that defendant committed the offense. *See State v. Bass*, 253 N.C. 318, 116 S.E. 2d 772 (1960). Since defendant admitted that he was with Langley at the time in question, and that no one else was present, the only real question for the jury was whether the sexual offense was committed on Langley. Therefore, when Dr. Danoff testified that in his opinion "an attack occurred on him" and "that this was reality," he clearly expressed an opinion as to defendant's guilt.

The remaining question for our consideration is whether the trial court's error in not striking the testimony complained of was prejudicial to defendant. We hold that it was prejudicial.

The test of harmless error "is whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction." G.S. 15A-1443; *Fahy v. Connecticut*, 375 U.S. 85, 86-87, 84 S.Ct. 229, 230, 11 L.Ed. 2d 171, 173 (1963). *Accord, State v. Thacker*, 281 N.C. 447, 455, 189 S.E. 2d 145, 150 (1972).

In the case at hand, a decision depended primarily on whether the jury believed Langley or defendant. Both proved good reputations and both introduced evidence as to statements they made following the evening in question. That being true, the testimony of Dr. Danoff was crucial and it is probable that the jury gave considerable weight to every part of his testimony. Consequently, we must conclude that there is a reasonable possibility that the challenged testimony might have contributed to defendant's conviction.

New trial.