STATE OF NORTH CAROLINA v. ANTHONY ELWOOD HEATH

No. 702A85

(Filed 2 April 1986)

**Criminal Law § 89.1— rape of child—examination of victim's psychologist about victim's truthfulness—error**

    The trial court erred in a prosecution for second degree rape and second degree sexual offense by permitting the prosecutor to ask an expert in clinical psychology whether the victim had a mental condition which would cause her to fabricate a story about the sexual assault. The question addressed itself to *the* sexual assault rather than fantasizing about sexual assaults in general, and the answer was not responsive in that it was addressed to a record of lying rather than a mental condition. N.C.G.S. 8C-1, Rules 405(a), 608, and 702; N.C.G.S. 15A-1443(a).

APPEAL by defendant pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, reported in 77 N.C. App. 264, 335 S.E. 2d 350 (1985), which found no error in the trial of defendant before *Barefoot, J.*, at the 16 July 1984

session of Superior Court, LENOIR County, but remanded the case for a new sentencing hearing. Heard in the Supreme Court 13 March 1986.

*Lacy H. Thornburg, Attorney General, by Tiare B. Smiley, Assistant Attorney General, for the state.*

*Malcolm Ray Hunter, Jr., Appellate Defender, by Gordon Widenhouse, Assistant Appellate Defender, for defendant.*

MARTIN, Justice.

The question dispositive of this appeal is whether the trial court erred in permitting the prosecutor to pose a question to an expert in clinical psychology regarding whether the victim had a mental condition which would cause her to fabricate a story about the sexual assault. Concluding that it so erred, we order a new trial.

At trial the state's evidence tended to show that on 5 February 1983 thirteen-year-old Victoria Ann Purser (Vickie), who had been living with her maternal grandparents in Grifton, was visiting her parents and siblings in Kinston. Vickie had gone to a nearby house to see her friend, Lisa Warren. Vickie testified that while she was sitting alone in the front porch swing waiting for Lisa to finish a phone call, the fifty-six-year-old defendant, who lived next door and whom the neighborhood children sometimes visited, came up the porch steps, spoke to her, and put his arm around her. Afraid, Vickie tried to get up and go back into Lisa's house, but defendant held her more tightly, turned her around, and began walking her to his house, telling her he had something to show her. Still tightly gripping her, he took her into his house, then into his bedroom, and he shut and locked the bedroom door. Vickie testified that she was scared and crying. She said that as defendant was taking her clothes off, he told her that if she told anybody, he didn't know what he would do to her, that he loved her, and that what he was going to do to her wouldn't hurt. Defendant then disrobed, lay down on the bed on top of her, committed cunnilingus on her, had intercourse with her, and forced her to perform fellatio on him. He then dressed, again warned her not to tell anyone, and left. Vickie put on her clothes and ran home, where she took a bath. She stayed in her bedroom the rest of the weekend.

Vickie testified that a similar incident had occurred between defendant and her around Easter 1980, but when she had told her older sister and Lisa about it, they had laughed at her and called her a liar. Thereafter, she began to have insomnia and nightmares, and Vickie asked to live with her grandparents. She did not return to the neighborhood for more than a year. During this time, she experienced nightmares and headaches, she became withdrawn and depressed. She ate excessively and her school grades fell.

During the first week of June 1983, Vickie told two friends, two schoolteachers, and her school principal about the two incidents with defendant. One teacher and the principal notified Vickie's mother, who took her daughter to the Lenoir Memorial Hospital Mental Health Center for counseling. The sheriff's department was called, and Vickie related both incidents to Lt. Rickie Pearson. She was examined by Dr. Rudolph I. Mintz, Jr., a gynecologist and obstetrician, on 10 June 1983 and by a psychologist, Dr. Stevenson, on 13 June 1983.

Defendant was arrested on 8 June 1983 and later indicted for rape in the second degree and two counts of sexual offense in the second degree. He denied assaulting or having sexual contact with Vickie. He was found guilty by a jury on all charges and was sentenced to a total of ten years in prison.

Defendant assigns as error the trial court's admitting the testimony of clinical psychologist Deborah Broadwell, who testified as the state's expert as to whether Vickie had a mental condition which would cause her to fabricate her story. On direct examination, Mrs. Broadwell, who had been treating Vickie since August 1983, said Vickie was diagnosed as suffering from major depression, with symptoms such as difficulty in sleeping and in concentrating in school, low self-esteem, side ideations, nightmares, depression and withdrawal, which were consistent with the reaction of a child who had been sexually assaulted. She said that other than the sexual attack Vickie described, there were no other reported situations sufficiently traumatic to cause such a major depression.

Defense counsel, who had earlier asked Vickie if her sister had thought she was lying about the attack because Vickie "had lied about so many other things" and had asked Vickie's mother if

she's experienced difficulties with Vickie's "making up stories," cross-examined Mrs. Broadwell about alleged discrepancies in statements made by Vickie to personnel in the hospital emergency room and at the mental health clinic. On redirect examination, the following exchange occurred:

> Q. Mrs. Broadwell, do you have an opinion satisfactory to yourself as to whether or not Vickie was suffering from any type of mental condition in early June of 1983, or a mental condition which could or might have caused her to make up a story about the sexual assault?

> Objection.

> COURT: Overruled.

> Q. What is your opinion?

> A. There is nothing in the record or current behavior that indicates that she has a record of lying.

Defendant contends that this was improper expert testimony in that it was elicited to bolster the victim's credibility and was thus admitted in violation of North Carolina Rules of Evidence 608 and 405. We agree that the question and the response were improper.

Rule 608(a), which is addressed to impeachment and rehabilitation of the credibility of a witness or the witness's propensity for truth, provides, in pertinent part:

> (a) **Opinion and Reputation Evidence of Character.** The credibility of a witness may be attacked or supported by evidence in the form of reputation or opinion as provided in Rule 405(a), but subject to these limitations: (1) the evidence may refer only to character for truthfulness or untruthfulness, and (2) evidence of truthful character is admissible only after the character of the witness for truthfulness has been attacked by opinion or reputation evidence or otherwise.

The official commentary to Rule 608 emphasizes that "[t]he reference to Rule 405(a) is to make it clear that expert testimony on the credibility of a witness is not admissible." The relevant portion of Rule 405, which governs methods of proving character, provides:

(a) **Reputation or Opinion.**In all cases in which evidence of character or a trait of character of a person is admissible, proof may be made by testimony as to reputation or by testimony in the form of an opinion. On cross-examination, inquiry is allowable into relevant specific instances of conduct. *Expert testimony on character or a trait of character is not admissible as circumstantial evidence of behavior.*

(Emphasis added.) The commentary to Rule 405(a) makes it clear that "[s]ince Fed. R. Evid. 405 opens up the possibility of proving character by means of expert witnesses, the last sentence was added to subdivision (a) to prohibit expert testimony on character as it relates to the likelihood of whether or not the defendant committed the act he is accused of."

We would be confronted with an entirely different situation had the assistant district attorney in the case sub judice asked the psychologist if she had an opinion as to whether Vickie was afflicted with any mental condition which might cause her to fantasize about sexual assaults in general or even had the witness confined her response to the subject of a "mental condition." However, we find that both the question, which addressed itself to "*the* sexual assault," and the answer, which concerned a "record of lying," were fatally flawed.

First, the prosecutor's question was propounded to the witness in terms of whether the victim could have been suffering from "a mental condition which could or might have caused her to *make up a story* about *the* sexual assault." (Emphases added.) A reasonable interpretation of the word "the" is that it refers to the particular incident in question, i.e., the sexual assault defendant allegedly committed on Vickie on 5 February 1983. Although the inquiry was disguised in the form of a query into Vickie's "mental condition," in essence it was a question designed to elicit an opinion of the witness as to whether Vickie had invented a story, or lied, about defendant's alleged attack on her. In short, the question was designed to extract the witness's opinion as to whether the defendant actually assaulted Vickie Purser on 5 February 1983 and in effect was aimed at divining Mrs. Broadwell's opinion as to the guilt of defendant. This was clearly improper under the criterion set forth in *State v. Brown*, 300 N.C. 731, 733, 268 S.E. 2d 201, 203 (1980), and reiterated in *State v. Keen*, 309 N.C. 158,

163, 305 S.E. 2d 535, 538 (1983), which prohibits an expert's expression of an opinion as to the defendant's guilt or innocence. In addition, the question was impermissible under the mandate of Rule 405(a) against the use of expert testimony on character or a character trait as circumstantial evidence of behavior and it also violated the prohibition of Rule 608 of using expert testimony to show the propensity of a witness for truth and veracity. It is one thing to ask an expert in psychology or psychiatry whether a victim *fantasizes*, but it is another thing altogether to ask whether a witness has *made up a story*, or lied. One who fantasizes can honestly and subjectively believe in the reality of the fantasized-about occurrence, but "making up a story," or lying, denotes an affirmative or conscious intent to deceive, invent, or not tell the truth. As mentioned earlier, Rules 608 and 405(a), read together, forbid an expert's opinion as to the credibility of a witness. *See also United States v. Binder*, 769 F. 2d 595, 602 (9th Cir. 1985).

These same rules were violated when the witness's response was addressed to a "record of lying." Such expert testimony on Vickie's character—here, her propensity or past history (or lack thereof) for lying—was not admissible since it related to the likelihood of whether Vickie was telling the truth about the alleged sexual assault and thereby to the likelihood that defendant committed the rape and sexual offenses of which he was accused. *Keen*, 309 N.C. 158, 305 S.E. 2d 535.

We also find that Mrs. Broadwell's answer was not responsive to the question asked by the prosecutor. The inquiry ostensibly was addressed to a "mental condition," but the psychologist's answer concerned a "record of lying." The evidence adduced under this answer was thus incompetent under N.C.R. Evid. 702 (formerly N.C.G.S. § 8-58.13) which provides:

### Rule 702. Testimony by Experts

If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion.

State's witness Broadwell was qualified by virtue of her knowledge as a psychologist specializing in child abuse cases and as

Vickie's treating mental health professional to render her opinion as to Vickie's mental condition. However, her reply went beyond the scope of her expertise and was irrelevant to the topic of mental state or condition, going instead to the victim's credibility or record for truth and veracity.

Having found error, it remains for us to determine whether the trial court's failure to sustain defendant's objection to the prosecutor's question was prejudicial to defendant. We hold that it was. Our review of the transcript reveals on the one hand, inter alia, that Vickie's recountings of her story to numerous persons generally were consistent; medical opinion was that Vickie had at some point been sexually penetrated; psychologist Broadwell presented strong evidence indicating that Vickie's various symptoms were consistent with those of a child who had been sexually assaulted; Vickie's sister testified to Vickie's good reputation for truthfulness. On the other hand, however, Lisa Warren and a telephone company representative testified that the Warrens' telephone was not operational on 5 February 1983 and thus Vickie's memory of waiting on the Warrens' porch while Lisa took a call was not accurate; Lisa testified that Vickie had "been known not to always tell the truth"; the doctor's examination indicating penetration of Vickie was performed more than four months after the alleged assault; a number of witnesses testified on behalf of defendant in support of his propensity towards honesty and his good character and reputation in the community; the evidence showed that neighborhood children often visited and watched television with this retired, physically disabled defendant in his home.

The standard of harmless error is whether "there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial out of which the appeal arises." N.C.G.S. § 15A-1443(a) (1977); *State v. Sills*, 311 N.C. 370, 378, 317 S.E. 2d 379, 384 (1984). In this case, in which the evidence was fairly evenly divided between both sides, the basic issue was whether the jury believed Vickie Purser or the defendant. Consequently, the jury probably gave considerable weight to the testimony of Mrs. Broadwell. Thus, we must conclude that there is a reasonable possibility that without this question and answer the jury would have reached a different

conclusion as to the guilt of the defendant. The defendant is entitled to a new trial.

The decision of the Court of Appeals is

Reversed.