STATE OF NORTH CAROLINA v. HAROLD TEETER

No. 8618SC984

(Filed 19 May 1987)

1. **Criminal Law § 89.1; Rape and Allied Offenses § 4— expert testimony — victim's ability to distinguish reality from fantasy — no evidence of emotional disorder**

   In a prosecution for second degree rape of a mentally retarded adult, testimony by a clinical psychologist that the prosecutrix showed no evidence of an emotional disorder which would impair her ability to distinguish reality from fantasy did not amount to an impermissible opinion as to the prosecutrix's credibility or defendant's guilt and was properly admitted as being within the scope of the witness's expertise.

2. **Criminal Law § 50.1; Rape and Allied Offenses § 4— expert testimony — behavior consistent with sexual abuse**

   A clinical psychologist's opinion testimony that the mentally retarded prosecutrix exhibited behavioral characteristics consistent with sexual abuse was based on adequate data within the purview of N.C.G.S. § 8C-1, Rule 703 where it was based upon the witness's experience in treating sexually abused mentally retarded persons, his familiarity with research and literature in that field, and his personal examination of the prosecutrix. Moreover, his opinion falls within the scope of expert testimony permitted by N.C.G.S. § 8C-1, Rule 702.

3. **Criminal Law § 89.1; Rape and Allied Offenses § 4— expert testimony — behavioral characteristics observed in victim**

   A clinicial psychologist's testimony explaining the behavioral characteristics that he observed in the mentally retarded prosecutrix did not constitute an impermissible opinion that the prosecutrix was telling the truth and that defendant was guilty. Furthermore, defendant waived objection to any inadmissible information in the witness's testimony by failing to object to the question or to move to strike the answer.

4. **Criminal Law § 89.1; Rape and Allied Offenses § 4— credibility of victim — expert testimony inadmissible**

   In a prosecution for second degree rape of a mentally retarded adult, testimony by an expert witness concerning her belief that the prosecutrix was telling the truth and the reason for her belief violated N.C.G.S. § 8C-1, Rules 405(a) and 608, which prohibit expert testimony on the issue of credibility of a witness. However, the admission of such testimony was harmless error under the facts of this case.

5. **Criminal Law § 34.8; Rape and Allied Offenses § 4.1— other sexual crimes by defendant — competency to show common plan**

   In a prosecution for second degree rape of a mentally retarded employee of a sheltered workshop by a supervisor at the workshop, evidence of defendant's sexual abuse of five other mentally retarded female employees at the

State v. Teeter

workshop was admissible to show a common plan or scheme by defendant to take sexual advantage of his relationship of authority over these women. N.C.G.S. § 1C-1, Rule 404(b).

### 6. Criminal Law § 89.2— corroborative evidence—additional information

Testimony which tended to add weight or credibility to the prosecutrix's testimony was properly admitted for corrobative purposes even though in some minor respects it contained additional information not related by the prosecutrix in her testimony.

### 7. Criminal Law § 86.8— rape victim's mother—contemplation of civil action— cross-examination to show bias

In a prosecution for rape of a mentally retarded victim, defendant was entitled to cross-examine the victim's mother about whether she was contemplating or preparing to bring a civil action for damages arising out of the incident involved in the criminal case for the purpose of showing bias of the witness. However, the exclusion of such testimony was not prejudicial error in light of the relatively insubstantial testimony given by the mother, the natural bias which the jury might expect of the mother of an alleged rape victim, and the fact that defense counsel cross-examined the mother concerning her employment of an attorney before an objection was sustained.

### 8. Constitutional Law § 4; Rape and Allied Offenses § 2— rape of mentally defective person—constitutionality of statute—intrusion on rights of handicapped persons—no standing by defendant to challenge

A defendant charged with second degree rape of a mentally defective person under N.C.G.S. § 14-27.3(a)(2) did not have standing to challenge the constitutionality of that statute on the ground that it intrudes upon the right of a physically handicapped or mentally disabled person to engage in consensual vaginal intercourse since defendant is not a member of the class whose rights he alleged are violated by the statute.

### 9. Rape and Allied Offenses § 5— rape of mentally defective person—sufficiency of evidence

The State's evidence was sufficient to sustain defendant's conviction of second degree rape of a mentally defective person in violation of N.C.G.S. § 14-27.3(a)(2) where it tended to show that defendant engaged in vaginal intercourse with the alleged victim, that the victim was mentally defective, and that defendant knew of her mental deficiency.

### 10. Criminal Law § 138.15— aggravating factor—evidence supporting joinable offense which was dismissed

In imposing a sentence for second degree rape of a mentally defective person in violation of N.C.G.S. § 14-27.3(a)(2), the trial court could properly find as a factor in aggravation that defendant took advantage of a position of trust or confidence to commit the offense even if evidence used to support such factor was also evidence of an element of a joinable offense of custodial sexual offense in violation of N.C.G.S. § 14-27.7 where a charge against defendant for custodial sexual offense was dismissed at the close of the State's evidence in the present case.

**11. Criminal Law § 138.14— single aggravating factor outweighing three mitigating factors**

> The trial court did not abuse its discretion in finding that the single aggravating factor found by the court outweighed the three mitigating factors found.

APPEAL by defendant from *John, Judge.* Judgment entered 25 April 1986 in Superior Court, GUILFORD County. Heard in the Court of Appeals 3 March 1987.

The defendant was convicted by a jury of second degree rape in violation of G.S. 14-27.3(a)(2). The trial court dismissed a related charge at the close of the State's evidence. Following a sentencing hearing, the trial court entered judgment sentencing defendant to the maximum term of imprisonment. Defendant appeals.

*Attorney General Lacy H. Thornburg, by Assistant Attorney General Charles H. Hobgood, for the State.*

*Robert S. Cahoon, for defendant-appellant.*

MARTIN, Judge.

By forty-two assignments of error brought forward on appeal, defendant contends that the trial court made numerous errors at his trial. He presents a number of the court's evidentiary rulings for our review. In addition, he asserts error in the denial of his motions to dismiss the charge, challenging the sufficiency of the evidence to support his conviction. He also contends that G.S. 14-27.3(a)(2) is unconstitutional, both on its face and as applied to him. Finally, he asks us to find error in the sentence imposed by the trial court. We find no prejudicial error in defendant's trial and uphold his conviction and the sentence imposed thereon.

The State's evidence at trial tended to show that in May 1984, and for approximately fifteen years prior thereto, defendant was employed as the director of Industrial Services of High Point, also known as the Sheltered Workshop, an agency of the Guilford County Mental Health, Mental Retardation and Substance Abuse Program. The agency conducts vocationally oriented training programs for mentally retarded adults. Robin Fleming, a thirty year old mentally retarded woman with an I.Q. of 43 and a mental age of six years and eight months, was a client-employee at the Sheltered Workshop during 1984.

The State's evidence further tended to show that on or about 24 May 1984, defendant came to the area where Robin was working, called her from her work, and took her to the first aid room. Once there, he removed her clothing, put baby oil and Vaseline between her legs, got on top of her and had vaginal intercourse with her. While defendant and the prosecuting witness were in the first aid room, Annie Truesdale, a supervisor at the Sheltered Workshop, came to the door. She had seen defendant and Robin leave the work area and had been suspicious. Finding the door to the first aid room locked, Mrs. Truesdale knocked, but received no response. When she knocked again, defendant asked who was at the door and Mrs. Truesdale identified herself. About three or four minutes later, defendant opened the door. Robin ran out of the room; defendant was standing in the room breathing heavily. Mrs. Truesdale did not report the incident to anyone at that time, but made a notation of the incident on her calendar.

In early May 1985, Robin told one of the instructors at the Sheltered Workshop that she did not want to go to defendant's office because he "closes the door and touches private parts of my body." Robin was taken to the office of one of the program coordinators where she was told that such accusations could be embarrassing and damaging to a person's reputation. After talking to the coordinator for approximately fifteen minutes, Robin recanted her earlier story and told the coordinator that defendant had never touched her and that she had made up the story to avoid work. Robin later apologized to the instructor for "telling tales."

On 29 May 1985, Mrs. Truesdale reported the incident in which she had found defendant and Robin in the first aid room to her supervisor, to another instructor, and to defendant's supervisor. Robin's mother was informed that Robin had been sexually molested and she questioned Robin. Robin told her mother of three separate incidents, including the one in the first aid room, when defendant had had sexual contact with her.

The State also offered the testimony of two other mentally retarded women who had been employed at the Sheltered Workshop in 1984. Each testified as to incidents of sexual molestation by defendant.

Defendant offered evidence tending to show that on one occasion, he took Robin Fleming into the first aid room because she

was complaining of trouble with her feet. He did not lock the door to the room and did not realize that it was locked. After he heard Mrs. Truesdale knock, he finished looking at Robin's foot, found nothing wrong with it, and went and opened the door. This took only a few seconds. He denied ever having touched Robin in a sexually suggestive manner and denied having intercourse or any other sexual contact with her or any other employee of the Sheltered Workshop. He offered evidence tending to show that he was out of town at the time that one of the State's witnesses alleged that he had sexually abused her. He also offered numerous witnesses who testified that he was of good character and was truthful.

In rebuttal, the State offered evidence tending to show that at various times defendant had had sexual contact with three other retarded women who had worked at the Sheltered Workshop. In his further rebuttal, defendant denied that he had had sexual contact with any of the three women.

By his initial argument, defendant contends that the trial court erred in permitting certain opinion testimony to be given by three expert witnesses: Dr. Andrew Short, a clinical psychologist who examined Robin Fleming on 23 July 1985; Dr. Martha K. Sharpless, a physician and medical examiner for Guilford County in sexual abuse cases who examined Robin on 31 July 1985; and Sheila Cromer, a nurse with experience in dealing with sexually abused mentally retarded adults, who interviewed Robin on 30 May 1985. Defendant contends that each of these expert witnesses was improperly permitted to state an opinion concerning the credibility of the prosecuting witness and the guilt or innocence of defendant. We address his contentions with respect to each witness.

[1]   Dr. Short, who was permitted to testify as an expert witness in the field of adult mental retardation and sexual abuse, was requested to examine Robin and to render an assessment of her mental retardation and a diagnosis for short-term treatment. Defendant excepts to the following question and answer given during Dr. Short's direct examination by the prosecutor:

Q. Doctor, in your examination of Robin Fleming and your assessment of her cognitive functioning, did you find any evi-

dence of any emotional disorder or psychoses which would impair her ability to distinguish reality from fantasy?

Mr. Cahoon: Objection.

The Court: Objection overruled.

A. No, sir. She showed no evidence of an emotional disorder which would impair her ability to do so.

Citing *State v. Heath,* 316 N.C. 337, 341 S.E. 2d 565 (1986), defendant contends that this testimony amounted to an impermissible expert opinion concerning Robin's credibility. We disagree.

In *Heath,* a psychologist was asked whether or not the victim suffered from a mental condition that could have caused her to "make up a story about the sexual assault." Because the question referred to *the* sexual assault with which defendant was charged, the Court held that it was designed to elicit improper expert opinion testimony as to whether the victim had consciously lied, so as to be prohibited by G.S. 8C-1, Rules 405(a) and 608. Moreover, the question was held to have the ultimate effect of calling for the witness's opinion as to defendant's guilt. In so holding, however, the Court pointed out that had the witness been asked about the presence of a mental condition which might cause the victim to fantasize in general, the result would have been different.

In the present case, the question was limited to whether or not Robin had any mental condition which would *generally* affect "her ability to distinguish reality from fantasy." It did not call for an opinion as to her propensity for telling the truth. The answer was within the scope of Dr. Short's expertise and did not amount to an impermissible opinion with respect to defendant's guilt or innocence. *See State v. Raye,* 73 N.C. App. 273, 326 S.E. 2d 333, *disc. rev. denied,* 313 N.C. 609, 332 S.E. 2d 183 (1985).

[2]  Dr. Short was also asked whether, in his opinion, Robin exhibited any behavioral characteristics consistent with sexual abuse. Defendant's objection was overruled and Dr. Short answered: "Yes, she did." Defendant contends that the opinion was not within the proper bounds of expert testimony as delineated by G.S. 8C-1, Rule 702, and was based on inadequate data, in violation of G.S. 8C-1, Rule 703. We disagree.

Dr. Short's opinion was based upon his experience in treating sexually abused mentally retarded persons, his familiarity with research and literature in that field, and his personal examination of Robin. We hold that these bases for his opinion were "of a type reasonably relied upon by experts" in the field in forming opinions upon the subject. G.S. 8C-1, Rule 703. Moreover, due to his specialized knowledge and expertise, Dr. Short was in a better position than the jurors to have an opinion on the subject and to assist the jurors in understanding the evidence and finding the facts therefrom. Thus, his opinion falls within the scope of permissible expert testimony. G.S. 8C-1, Rule 702; *State v. Wilkerson*, 295 N.C. 559, 247 S.E. 2d 905, 98 A.L.R. 3d 285 (1978).

[3]   Dr. Short was then asked, without objection, to explain the behavioral characteristics that he observed in Robin and found to be consistent with her having suffered sexual abuse. He testified that Robin was nervous and agitated, had nightmares about sexual abuse, and expressed fear of her alleged abuser. The manner in which she described the events was consistent with the manner in which other mentally retarded persons had described instances of sexual abuse. Finally, due to her limited knowledge and understanding of sexual matters, Dr. Short found it unlikely that Robin would be able to produce the descriptions she gave of sexual acts unless those acts had occurred with her. Defendant did not move to strike the answer. He contends on appeal, however, that Dr. Short's testimony should not have been admitted because it contained an opinion that Robin was telling the truth and, therefore, an opinion as to defendant's guilt.

Contrary to defendant's argument, Dr. Short never testified that the sexual acts related by Robin were committed by any particular person, nor did he purport to express an opinion as to defendant's guilt or innocence. *See Wilkerson, supra.* However, even assuming that the testimony was improper, defendant neither objected to the question nor moved to strike the answer. Error may not be asserted with regard to the admission of evidence in the absence of a timely objection or motion to strike. G.S. 8C-1, Rule 103(a). Failure to move to strike an answer, when its admissibility is not indicated by the question but becomes apparent by some aspect of the answer, waives any objection to the inadmissible information. *State v. Atkinson*, 309 N.C. 186, 305 S.E. 2d 700 (1983). The exceptions to Dr. Short's testimony are overruled.

Defendant advances similar arguments with respect to the testimony of Dr. Sharpless, who testified on the third day of defendant's trial, two days after Dr. Short's testimony. Dr. Sharpless was permitted to testify, over defendant's objection, that Robin "had a very classic limited knowledge of sex," "almost a rudimentary knowledge of sex" and that it "would have been impossible for her to make up" the details and chronology of events which she described. Since substantially the same evidence had already been admitted without objection through the testimony of Dr. Short, defendant has lost the benefit of his objection and cannot complain on appeal about Dr. Sharpless's testimony. *State v. Corbett*, 307 N.C. 169, 297 S.E. 2d 553 (1982); *State v. Winford*, 279 N.C. 58, 181 S.E. 2d 423 (1971).

[4] Sheila Cromer, a nurse for the gynecologist who examined Robin on 30 May 1985, testified that she obtained a history from Robin. Although she was tendered by the prosecutor as an expert witness with respect to sexually abused mentally retarded adults, Ms. Cromer's direct testimony consisted solely of her recounting Robin's statement to her, and the jury was instructed to consider it only as it tended to corroborate Robin's testimony. Defendant's counsel then cross-examined Ms. Cromer about various things that Robin had told her and concluded his examination as follows:

Q. Did it ever occur to you that she was telling something that wasn't true?

A. No.

On redirect examination, the prosecutor asked:

Q. Now, Ms. Cromer, did it ever occur to you that she was telling the truth—that Robin Fleming was telling the truth?

A. Yes. I believed her.

Q. And tell the members of the jury why you believed Robin Fleming was telling the truth.

MR. CAHOON: Object to that.

THE COURT: Overruled.

*   *   *

A. When I talk with children or adults who have been sexually abused, I typically try to get them to tell me the story from different angles. Every time I went to Robin to go back to the story, her story was always consistent no matter how I tried to take her off-track or if she took herself off-track, which was something that will commonly happen during the conversation. When she became concerned about what was being said, or upset, that she would change the subject totally to something different, whether it had to do with the Workshop shutting down or something that had happened on the way to the office, or whatever. Consistently, when I took her back to the story, Robin always told the story of what had happened to her consistently, never changing the basic facts of what had been occurring to her.

Defendant contends, and we agree, that the admission of Ms. Cromer's testimony that she believed Robin and the reason for her belief was error. G.S. 8C-1, Rules 405(a) and 608 prohibit the admission of expert testimony on the issue of credibility of a witness. *State v. Aguallo*, 318 N.C. 590, 350 S.E. 2d 76 (1986); *State v. Heath, supra.* The error, however, does not entitle defendant to a new trial. To warrant a new trial, a defendant must show not only error, but also that he was prejudiced by the erroneous admission of the evidence. *State v. Alston*, 307 N.C. 321, 298 S.E. 2d 631 (1983). In order to show prejudice, a defendant must show "a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial. . . ." G.S. 15A-1443(a).

In the present case, defendant has failed to show prejudice. First, defendant did not object to the first question asked of Ms. Cromer on redirect examination, nor did he move to strike Ms. Cromer's inadmissible response. Thus, defendant not only waived his objection to the question and answer, *State v. Marlow*, 310 N.C. 507, 313 S.E. 2d 532 (1984), but he also failed to preserve the issue for review. App. R. 10(b)(1). Moreover, defendant had already established, on cross-examination, that Ms. Cromer had not considered Robin's story to be untrue, essentially the same evidence as her testimony that she believed Robin. We also observe that at the time of Ms. Cromer's testimony concerning Robin's statement to her, the jurors had already heard Robin testify and had heard the testimony of at least one other witness

as to what Robin had related to him about the incidents. Thus, the jurors were in a position to assess for themselves whether Robin's stories were consistent, and we do not believe that Ms. Cromer's testimony to the effect that she found them to be consistent had any significant influence on that assessment. Finally, we note that, unlike *Aguallo* and *Heath,* the State's case was not entirely dependent upon the testimony of the prosecuting witness. Therefore, we conclude that there is no reasonable possibility that, absent the erroneous admission of Ms. Cromer's testimony on redirect examination, a different result would have been reached by the jury.

[5]  Defendant's next assignments of error are directed to the admission of testimony, during the State's case in chief and during the State's rebuttal, that defendant had sexually abused other client-employees of the Sheltered Workshop. He contends that such evidence was inadmissible because it had no logical relevance other than to show his bad character and predisposition to commit the offense for which he was being tried. We disagree.

G.S. 8C-1, Rule 404(b) provides:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment or accident.

Rule 404(b) is consistent with prior North Carolina decisional law. *State v. DeLeonardo,* 315 N.C. 762, 340 S.E. 2d 350 (1986). Our Supreme Court has characterized as very liberal its decisions admitting evidence of similar sex offenses. *State v. Williams,* 303 N.C. 507, 279 S.E. 2d 592 (1981); *State v. Greene,* 294 N.C. 418, 241 S.E. 2d 662 (1978). "This position has included allowing the admission of evidence showing sexual assaults by the defendant against people other than the victim in the crime for which he is on trial." *State v. Gordon,* 316 N.C. 497, 504, 342 S.E. 2d 509, 513 (1986).

In the present case, the State offered evidence that defendant had committed similar acts upon other women for the explicit purpose of showing a common plan or scheme. The testimony of the five witnesses shows striking similarities in the circumstances

of the assaults allegedly committed by defendant against them and the one allegedly committed upon Robin Fleming. Each of the witnesses who testified that she had been sexually molested by defendant was a mentally retarded female employee of a sheltered workshop where defendant had been in a position of authority. All were close in chronological age to Robin. All of them testified that the sexual incidents had occurred on the premises of the workshop during working hours. Two of them claimed to have been molested in the first aid room, the same place where defendant allegedly had intercourse with Robin. Most of the incidents about which the women testified happened within two years of the incident for which defendant was on trial. Other similar circumstances were shown by their testimony. We conclude that the testimony of these witnesses tended to prove a continuing and ongoing course of sexual molestation by defendant of mentally retarded young women employed under his supervision, and a common plan or scheme to take sexual advantage of his relationship of authority over these women. The evidence was therefore relevant and admissible under Rule 404(b).

We also reject defendant's argument that even though relevant, the evidence should have been excluded under G.S. 8C-1, Rule 403 because its probative value was substantially outweighed by its prejudicial effect. Although the evidence was certainly damaging to defendant, we do not find that the danger of unfair prejudice to him outweighed the probative value of the testimony.

Moreover, we note that the testimony of three of the five witnesses was offered by the State in rebuttal of defendant's testimony that he had never had any sexual contact with any employee of the Greensboro or High Point Sheltered Workshops. By his testimony, defendant "opened the door," and the State was entitled to rebut it by offering evidence to the contrary. *State v. Brown*, 310 N.C. 563, 313 S.E. 2d 585 (1984). These assignments of error are overruled.

[6] Defendant assigns error to the rulings of the trial court which permitted several of the State's witnesses to testify in corroboration of Robin Fleming. He contends that the testimony of these witnesses went beyond that given by Robin. We have reviewed defendant's contentions with respect to each of his ex-

ceptions to the admission of corroborating testimony and find no error in the trial court's rulings.

With respect to corroborative testimony, our Supreme Court has recently stated:

> In order to be corroborative and therefore properly admissible, the prior statement of the witness need not merely relate to specific facts brought out in the witness's testimony at trial, so long as the prior statement in fact tends to add weight or credibility to such testimony. [Citations omitted.] Our prior statements are disapproved to the extent that they indicate that additional or "new" information, contained in the witness's prior statement but not referred to in his trial testimony, may never be admitted as corroborative evidence. [Citations omitted.]

*State v. Ramey,* 318 N.C. 457, 469, 349 S.E. 2d 566, 573-74 (1986). It is the province of the jury to determine if such evidence is actually corroborative. *State v. Higginbottom,* 312 N.C. 760, 324 S.E. 2d 834 (1985).

All of the corroborating testimony offered by the State in the present case tended to add weight or credibility to Robin's testimony, even though in some minor respects it contained additional information not related by Robin in her testimony. In each instance, the trial court properly instructed the jurors as to the limited purpose for which such corroborating testimony might be considered. These assignments of error are overruled.

[7] Defendant also assigns error to a ruling of the trial court which he contends amounted to a prejudicial restriction upon right to cross-examine Frances Fleming, Robin's mother. During his cross-examination of Mrs. Fleming, defendant's counsel established that she had employed an attorney and that the attorney was in the courtroom observing defendant's trial. Defendant's assignment of error is based upon the following exchange:

> Q. Well, isn't it true that all that testimony about nightmares and fear and afraid to go to work and afraid of Mr. Teeter is part of a lawsuit that you're fixing to launch against everybody involved in this matter?
>
> A. I beg your pardon.

Q. Are you not fixing to launch a lawsuit?

A. I have not filed any lawsuit or anything else. I am trying to tell the truth.

Q. But that's what you have in mind, isn't it—bringing a lawsuit?

MR. KIMEL: We object.

THE COURT: Objection sustained.

Defendant contends, and we agree, that he was entitled to cross-examine Mrs. Fleming concerning any possible bias which might discredit her testimony, including the fact that she was contemplating or preparing to bring a civil action for damages arising out of the incident involved in the criminal case. *State v. Hart*, 239 N.C. 709, 80 S.E. 2d 901, 41 A.L.R. 2d 1199 (1954). We conclude that the question asked by defense counsel was proper; we do not, however, find that the trial court's error in sustaining the State's objection entitles defendant to a new trial.

A trial judge's rulings with respect to the scope of cross-examination will not be disturbed unless the defendant can show that the verdict was improperly influenced thereby. *State v. Wilson*, 311 N.C. 117, 316 S.E. 2d 46 (1984). This rule is consistent with the requirement of G.S. 15A-1443(a) that a defendant has the burden of showing prejudice. Considering the relatively insubstantial testimony given by Mrs. Fleming, who was mainly a corroborating witness, the natural bias which the jury might expect of the mother of an alleged rape victim, and the extent to which defendant's counsel cross-examined Mrs. Fleming concerning her employment of an attorney before the objection was sustained, we are convinced that the trial judge's ruling did not influence the verdict in this case. Thus, the error was not prejudicial.

[8]  By the next assignments of error argued in his brief, defendant challenges the constitutionality of G.S. 14-27.3(a)(2). The statute provides, in pertinent part:

(a) A person is guilty of rape in the second degree if the person engages in vaginal intercourse with another person:

.  .  .

(2) Who is mentally defective, mentally incapacitated, or physically helpless, and the person performing the act knows or should reasonably know the other person is mentally defective, mentally incapacitated, or physically helpless.

Definitions of the terms "mentally defective," "mentally incapacitated," and "physically helpless" are contained in G.S. 15-27.1(1)(2) and (3). Defendant contends that the statute is so overbroad as to unconstitutionally infringe upon a physically handicapped or mentally disabled person's "fundamental right to personal privacy" by intruding upon such a person's right to engage in consensual vaginal intercourse.

Unquestionably, the protection of persons who, by reason of mental or physical incapacity, are unable to protect themselves from sexual abuse, is a legitimate governmental objective, recognized by the Legislature in the passage of the statute. We need not, however, decide the question posed by defendant because a decision is unnecessary to the resolution of this appeal. Courts will not consider an attack upon the constitutionality of a statute when the attack is made by a party whose own rights are not discriminated against by the statute. *State v. Trantham*, 230 N.C. 641, 55 S.E. 2d 198 (1949). Defendant is neither "mentally defective," "mentally incapacitated," nor "physically helpless." Thus, he is not a member of the class whose rights he alleges are violated by G.S. 14-27.3(a)(2) and he has no standing to challenge its constitutionality. *See In re Appeal of Martin*, 286 N.C. 66, 209 S.E. 2d 766 (1974); *State v. Trantham, supra.*

[9] By assigning error to the denial of his motions to dismiss made at the close of all the evidence and again after return of the verdict of guilty, defendant challenges the sufficiency of the evidence to sustain his conviction. It is well established that a defendant's motion to dismiss criminal charges will be denied where there is substantial evidence of each essential element of the crime charged. *State v. Earnhardt*, 307 N.C. 62, 296 S.E. 2d 649 (1982). Substantial evidence is such as allows a reasonable inference to be drawn as to the defendant's guilt of the crime charged. *Id.* In making the determination, the trial court must consider the evidence in the light most favorable to the State, giving the State the benefit of every reasonable inference and resolving all incon-

sistencies in the State's favor; the defendant's evidence is not taken into consideration unless favorable to the State or explicative of the evidence offered by the State. *Id.*

Applying the foregoing principles to the evidence in the present case, we conclude that there was substantial evidence presented at defendant's trial that he engaged in vaginal intercourse with Robin Fleming, that Robin Fleming was mentally defective as defined by G.S. 14-27.1(1), and that defendant knew of her mental deficiency. Because there was substantial evidence of each essential element necessary for defendant's conviction of second degree rape in violation of G.S. 14-27.3(a)(2), as charged in the bill of indictment, defendant's motions to dismiss were properly denied.

Finally, defendant requests that we vacate the sentence imposed by the trial court and grant him a new sentencing hearing. He bases his request upon two contentions, neither of which have merit.

[10] Defendant first asserts that the trial court erred in finding, as the sole factor in aggravation, that "defendant took advantage of a position of trust or confidence to commit the offense." He contends that the evidence used to support the factor, i.e., his position as director of the Sheltered Workshop, was also evidence of an element of the joinable offense of vaginal intercourse by a person having custody of the victim, in violation of G.S. 14-27.7. Defendant cites *State v. Puckett*, 66 N.C. App. 600, 312 S.E. 2d 207 (1984), in which a panel of this Court held that evidence of an element of a joinable offense with which a defendant has not been charged may not be used to support a finding of an aggravating factor.

Our Supreme Court has held that a trial court may properly consider evidence in support of an aggravating factor even though the same evidence might also prove an element of an offense joinable with the offense for which defendant is being sentenced, if the joinable offense has been dismissed. *State v. Mann*, 317 N.C. 164, 345 S.E. 2d 365 (1986). In the present case, defendant was charged with violating G.S. 14-27.7 and that charge was joined with the second degree rape charge for trial. However, the indictment charging a violation of G.S. 14-27.7 was dismissed at the close of the State's evidence. Therefore, under *Mann*, it was

proper for the trial court to consider defendant's position as a factor in aggravation of sentence. Moreover, the evidence showed that Robin Fleming was a client-employee of the Sheltered Workshop, who went to work from her home each day. There was no evidence that either the Sheltered Workshop or defendant was vested with custody of Robin. Defendant's contention with respect to the aggravating factor is overruled.

[11] Defendant's second contention is that the trial court erred in determining that the single aggravating factor found by the court outweighed the three mitigating factors found. The weight to be given aggravating and mitigating factors is clearly within the sound discretion of the trial judge, whose decision will not be disturbed absent an abuse of that discretion. *State v. Ahearn,* 307 N.C. 584, 300 S.E. 2d 689 (1983); *State v. Davis,* 58 N.C. App. 330, 293 S.E. 2d 658, *disc. rev. denied,* 306 N.C. 745, 295 S.E. 2d 482 (1982). Defendant has failed to show an abuse of discretion on this appeal. This assignment of error is overruled.

In summary, we hold that defendant received a fair trial, free from prejudicial error.

No error.

Judges ARNOLD and GREENE concur.