STATE OF NORTH CAROLINA v. REYNARLDO RAFAEL RIVERA

No. COA11-268

(Filed 1 November 2011)

**Robbery—dangerous weapon—stun gun—motion to dismiss—sufficiency of evidence—manner of use—serious nature of injuries**

The trial court did not err by denying defendant's motion to dismiss and instructing the jury on robbery with a dangerous weapon even though a corporal testified that a stun gun was less than lethal when properly used. The stun gun was a dangerous weapon that endangered or threatened the victim's life based on its manner of use and the serious nature of the victim's injury. The State was not required to prove that the victim was actually in fear for her life.

Appeal by defendant from judgment entered 29 October 2010 by Judge R. Allen Baddour, Jr. in Wake County Superior Court. Heard in the Court of Appeals 14 September 2011.

*Attorney General Roy Cooper, by Assistant Attorney General Douglas W. Corkhill, for the State.*

*Edward Eldred Attorney at Law, PLLC, by Edward Eldred, for defendant-appellant.*

HUNTER, Robert C., Judge.

Reynarldo Rafael Rivera ("defendant") appeals from the trial court's entry of judgment after a jury returned a verdict finding him guilty of robbery with a dangerous weapon. After careful review, we find no error.

## Background

The State's evidence tended to establish the following facts: On the morning of 8 September 2008, Josephine Scott ("Scott") was working as a Customer Service Representative at a branch of the Fort Sill National Bank located inside a Wal-Mart in Wake County, North Carolina. At approximately noon, two men robbed Scott and her manager, Lashonda Bond, while they replenished a cash cassette in one of the bank's ATMs. One man approached Scott from her front and grabbed the cassette from her hands. As Scott struggled over the cas-

sette, another man approached from her left side and shocked her with a stun gun. Scott did not see the man but felt a burning pain rated at a seven or eight on a ten-point scale. Scott saw the two men escape with the cassette as she fell to the ground, tearing her rotator cuff in the process. For two to three weeks after the robbery, Scott retained red marks where she was shocked. Scott's fall and torn rotator cuff resulted in two surgeries, required physical therapy, limited her left arm's range of motion, caused her to miss approximately one month of work, and continued to cause pain two years after the robbery occurred.

Police arrested defendant for the robbery but did not recover the stun gun. During trial, the State's expert witness, Corporal Gerald Takano of the Raleigh Police Department, viewed photographs of Scott's injuries and stated that they were "highly consistent with signature marks from a stun gun in stun gun mode." Corporal Takano also testified that "the overall potential for serious physical injury or death [from a stun gun] is minimal," and "the overall potential for serious physical injury or death [from a stun gun] would be consistent with being struck with a hand or foot."

At the close of the State's case, defendant moved to dismiss the charge of robbery with a dangerous weapon. The trial court denied the motion. Defendant moved to dismiss on the same ground at the conclusion of all evidence and the trial court again denied the motion. The trial court submitted the charges of common-law robbery and robbery with a dangerous weapon to the jury. The jury found defendant guilty of robbery with a dangerous weapon and the trial court sentenced him to an active term of imprisonment of 77 to 102 months. Defendant gave notice of appeal in open court.

## Discussion

Defendant contends that the State presented insufficient evidence to establish that the stun gun was a dangerous weapon that endangered or threatened Scott's life. Defendant claims that the trial court should have instructed the jury only on the lesser included offense of common law robbery. We disagree.[1]

When a defendant moves for dismissal, the trial court is to determine whether there is substantial evidence (a) of each essential

---

1. Defendant seeks to frame his argument as strictly pertaining to the trial court's jury instructions; however, defendant's argument regarding sufficiency of the evidence, and the authority cited in support of his argument, pertains to denial of defendant's motion to dismiss the charged offense.

element of the offense charged, or of a lesser offense included therein, and (b) of defendant's being the perpetrator of the offense. If so, the motion to dismiss is properly denied.

*State v. Earnhardt*, 307 N.C. 62, 65-66, 296 S.E.2d 649, 651-52 (1982). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 66, 296 S.E.2d at 652. "In 'borderline' or close cases, our courts have consistently expressed a preference for submitting issues to the jury, both in reliance on the common sense and fairness of the twelve and to avoid unnecessary appeals." *State v. Hamilton*, 77 N.C. App. 506, 512, 335 S.E.2d 506, 510 (1985) (citing *State v. Vestal*, 283 N.C. 249, 195 S.E.2d 297, *cert. denied*, 414 U.S. 874, 38 L. Ed. 2d 114 (1973)).

The elements of robbery with a dangerous weapon are: (1) the unlawful taking or an attempt to take personal property from the person or in the presence of another; (2) by use or threatened use of a firearm or other dangerous weapon; (3) whereby the life of a person is endangered or threatened. N.C. Gen. Stat. § 14-87 (2009); *State v. Small*, 328 N.C. 175, 181, 400 S.E.2d 413, 416 (1991). "The element of danger or threat to the life of the victim is the essence of the offense." *State v. Gibbons*, 303 N.C. 484, 489, 279 S.E.2d 574, 578 (1981). The dispositive issue in this case is whether there was sufficient evidence presented at trial to establish that the stun gun was a dangerous weapon that endangered or threatened Scott's life.

When deciding whether an object is a dangerous weapon, our Supreme Court has stated:

The rules are: (1) When a robbery is committed with what appeared to the victim to be a firearm or other dangerous weapon capable of endangering or threatening the life of the victim and there is no evidence to the contrary, there is a mandatory presumption that the weapon was as it appeared to the victim to be. (2) If there is some evidence that the implement used was not a firearm or other dangerous weapon which could have threatened or endangered the life of the victim, the mandatory presumption disappears leaving only a permissive inference, which permits but does not require the jury to infer that the instrument used was in fact a firearm or other dangerous weapon whereby the victim's life was endangered or threatened. (3) If all the evidence shows the instrument could not have been a firearm or other dangerous weapon capable of threatening or endangering the life of the victim, the armed robbery charge should not be submitted to the jury.

*State v. Allen,* 317 N.C. 119, 124-25, 343 S.E.2d 893, 897 (1986). "We must look at the circumstances of use to determine whether an instrument is capable of threatening or endangering life." *State v. Westall,* 116 N.C. App. 534, 539, 449 S.E.2d 24, 27, *disc. review denied,* 338 N.C. 671, 453 S.E.2d 185 (1994).

In the present case, defendant claims that Corporal Takano's classification of stun guns as "less than lethal" devices with an impact similar to that inflicted by a hand or foot constituted affirmative proof that the stun gun used by defendant could not be considered a dangerous weapon as a matter of law. We disagree. Corporal Takano's testimony tended to establish that a stun gun is not a dangerous weapon in and of itself *when properly used* under controlled conditions. Corporal Takano did not testify that stun guns can *never* be considered dangerous weapons. In fact, Corporal Takano stated that stun guns are considered "less than lethal" weapons simply because they fall somewhere between hands and feet and firearms on the "force continuum." Police officers use the force continuum to determine how much force they can apply in a given situation. The force continuum is comprised of five categories ranked in order from least dangerous to most dangerous: hands-on/restraining techniques, striking techniques (inflicting blows with hands or feet), impact weapons (use of batons, etc.), less than lethal weapons, and firearms. Despite classifying stun guns as "less than lethal" weapons, Corporal Takano stated that any weapon or object can be a dangerous weapon depending on "the manner in which it can be used." Further indicating that a stun gun can be a dangerous weapon in certain circumstances, Corporal Takano stated that "any use of force, whether it be from the low end of restraining, just touching someone, all the way through using a firearm[,] [t]hey all have a potential for causing serious physical injury or death."

Defendant also points to the fact that the Raleigh Police Department tested Taser-brand X26 stun guns on many of its officers. However, Raleigh police officers were tased by experienced professionals in an environment designed to minimize the risk of injury. In fact, the police department required a neurosurgeon to attend testing sessions. Additionally, Corporal Takano stated that the Taser X26 model has a low energy output and is the weakest of all current production stun guns used by law enforcement. Because the stun gun in this case was never recovered, Corporal Takano could not testify to its nature and reasonably conclude that its output strength and

capacity to endanger life was equivalent to the low-output X26. When used in such a controlled manner, it is likely that a stun gun shock will not produce serious bodily injury or death. The manner in which the stun gun was used in this case differs greatly from the Raleigh Police Department's safety-oriented training. In sum, Corporal Takano's testimony did not establish that a stun is not a dangerous weapon as a matter of law.

To the contrary, this Court specifically addressed the dangerous nature of a stun gun in *State v. Gay*, 151 N.C. App. 530, 566 S.E.2d 121 (2002) and held that it was a dangerous weapon under the circumstances of that case. There, the defendant admitted "that a stun gun can be a dangerous weapon, depending on how it is used." *Id.* at 533, 566 S.E.2d at 124. The facts at trial tended to establish that the defendant approached a woman, "wrapped his left arm around her neck and placed a 'stun gun' up against her neck. Defendant took [the victim's] backpack with the money inside and fled the scene." *Id.* at 531, 566 S.E.2d at 123. Even though the defendant in *Gay* did not shock the victim, the Court determined that the stun gun was a dangerous weapon based on the manner in which it was used. *Id.* at 533, 566 S.E.2d at 124.

Having determined that a stun gun can be considered a dangerous weapon, we must still look to the manner in which the stun gun was used in the instant case to determine if the charge of robbery with a dangerous weapon was properly presented to the jury. Here, Scott was tased, suffered significant pain from the shock, fell, and injured her rotator cuff. She endured two surgeries and extensive physical therapy. Two years after the robbery, Scott was still experiencing pain and a limited range of motion in her left arm. Scott's injuries far exceeded those of the victim in *Gay*. Still, defendant contends that, despite her serious injury, Scott's *life* was not endangered or threatened. Defendant's argument is without merit.

This Court has established that

> [t]he use of a dangerous weapon need not result in death, but the instrument itself must merely be capable of taking life in the manner that it was used. . . . [A]ny instrument capable of causing serious bodily injury could also cause death depending on its use. *In our view, serious bodily injury is synonymous with endangering or threatening life.*

*Westall*, 116 N.C. App. at 541, 449 S.E.2d at 28 (emphasis added) (internal citation omitted). Moreover, our courts have consistently held that an object can be considered a dangerous or deadly weapon based on the manner in which it was used even if the instrument is not considered dangerous *per se* and the weapon does not cause death or a life threatening injury. *See State v. Joyner*, 295 N.C. 55, 65, 243 S.E.2d 367, 374 (1978) (considering a glass bottle a deadly weapon when used in a sexual assault); *State v. Cockerham*, 129 N.C. App. 221, 226, 497 S.E.2d 831, 834 (considering gasoline a dangerous weapon when in close proximity to a book of matches), *disc. review denied*, 348 N.C. 503, 510 S.E.2d 659 (1998); *Westall*, 116 N.C. App. at 540-41, 449 S.E.2d at 28 (considering a pellet gun a dangerous weapon when aimed at a vital organ but not fired); *State v. Funderbunk*, 60 N.C. App. 777, 778, 299 S.E.2d 822, 823 (considering an inoperable air gun a dangerous weapon when used as a club, giving the victim a black eye), *disc. review denied*, 307 N.C. 699, 301 S.E.2d 392 (1983). These cases, as well as *Gay*, demonstrate that our courts rely on resulting and, at times, potential injuries when determining if an object qualifies as a dangerous weapon. *See also State v. Roper*, 39 N.C. App. 256, 258, 249 S.E.2d 870, 871 (1978) ("The actual effects produced by the weapon may also be considered in determining whether it is deadly.").

Here, it is true that Scott did not die or come close to death; nevertheless, she was seriously injured. We hold that due to the actual effect of the stun gun in this case—serious injury—a permissive inference existed sufficient to support a jury determination that the stun gun was a dangerous weapon.

Defendant further argues that even if a stun gun can be classified as a dangerous weapon, the use of the stun gun in this case did not threaten Scott's life because she did not know that she was being robbed or that she was about to be tased before it occurred. Defendant bases this argument on Scott's statements that "everything happened so fast and simultaneously" and that she had "no suspicion or anything like that" immediately before the robbery. This argument is without merit. The State was not required to prove that Scott was actually in fear for her life. *Joyner*, 295 N.C. at 63, 243 S.E.2d at 373. "[T]he State could prove, at the least, that during the course of the robbery or attempted robbery, there was a threatened use of a dangerous weapon which endangered or threatened the life of the victim." *Id.* Since we have determined that the stun gun used by defend-

ant could be considered a dangerous weapon given the manner in which it was used, it was not necessary for the State to establish that Scott was actually in fear for her life.[2]

In sum, Corporal Takano's testimony that a stun gun is "less than lethal" when properly used did not establish that a stun gun can never be considered a dangerous weapon. *Gay* clearly set forth that a stun gun can be a dangerous weapon depending upon the manner in which it was used. We hold that, given the serious nature of the injury suffered by Scott, the question of whether the stun gun was a dangerous weapon that threatened or endangered Scott's life was properly placed before the jury. The trial court did not err by denying defendant's motion to dismiss and instructing the jury on robbery with a dangerous weapon.

No error.

Judges STEELMAN and McCULLOUGH concur.

---

2. We note that N.C. Gen. Stat. § 14-269(a) (2009) states that "[i]t shall be unlawful for any person willfully and intentionally to carry concealed about his person any bowie knife, dirk, dagger, slung shot, loaded cane, metallic knuckles, razor, shurikin, stun gun, or other deadly weapon of like kind, except when the person is on the person's own premises." Although not dispositive, N.C. Gen. Stat. § 14-269(a) shows legislative intent to classify stun guns as deadly weapons. Numerous states mirror this intent. Possession of a stun gun is a crime in Hawaii (Haw. Rev. Stat. § 134-16(a) (2007)), New Jersey (N.J. Stat. Ann. § 2C:39-3(h) (2009)), New York (N.Y. Penal Law § 265.01(1) (2008)), Wisconsin (Wis. Stat. Ann. § 941.295(1) (2003)), Rhode Island (R.I. Gen. Laws § 11-47-42(a)(1) (1994)), Michigan (Mich. Comp. Laws Ann. § 750.224a(1) (2004)), and Massachusetts (Mass. Gen. Laws Ann. ch. 140, § 131J (2004)). Pennsylvania considers stun guns prohibited offensive weapons. 18 Pa. Cons. Stat. Ann. § 908 (2002). It is illegal to carry a stun gun in public in Illinois and Connecticut. 720 Ill. Comp. Stat. 5/24-1(a)(2) (2010); Conn. Gen. Stat. § 53-206(a) (2010). Indiana regulates stun gun use with its handgun laws and requires citizens to hold a concealed weapons permit before carrying a stun gun in public. Ind. Code Ann. § 35-47-2-1 (2011); Ind. Code Ann. § 35-47-8-4 (1985).