DILLON, Judge.
 

 *572
 

 *513
 
 Defendant Tyrone Churell Davis appeals from a judgment finding him guilty of second degree rape and sexual battery.
 

 On appeal, Defendant argues that he is entitled to a new trial based on portions of the jury charge and based on inadmissible testimony offered by one of the State's witnesses; namely, the nurse who examined Emma
 
 [1]
 
 and who was qualified as a "sexual assault nurse examiner" expert.
 

 I. Background
 

 Defendant was indicted and tried for two counts of second degree rape and one count of sexual battery against Emma.
 

 The State's evidence showed as follows. On the night in question Emma and a friend went out drinking and then decided to go to Defendant's residence to purchase cocaine. While there, they snorted cocaine. Emma then fell asleep on a bed, fully clothed. Defendant and Emma's friend went back out. But at some point, Defendant returned to his residence by himself, where Emma was still asleep. Sometime later, early in the morning, Emma woke up with Defendant on top of her having sexual intercourse with her. Emma pushed Defendant off of her. She heard her friend knocking on the door. She opened the door and told her friend that she had been raped by Defendant. They called the police.
 

 The only direct evidence of the rape
 
 itself
 
 offered by the State was Emma's testimony. The State also called Emma's friend; an emergency room physician and a nurse who treated Emma; and members of the police who were on duty early that morning. The physician testified that she did not perform a forensic exam of Emma, stating that she felt Emma was not sober enough to consent to an exam.
 

 The nurse testified that she was able to physically examine Emma and question Emma, though Emma still smelled of alcohol and was sleepy. The nurse testified that her exam of Emma's pelvis was normal.
 

 Defendant testified on his own behalf. He did not deny his sexual encounter with Emma, but he claimed that the encounter was consensual.
 

 The jury found Defendant guilty as charged. Judgment was arrested on one count of second degree rape. Defendant was sentenced in the presumptive range for the remaining charges.
 

 Defendant gave notice of appeal in open court.
 

 *514
 
 II. Analysis
 

 Defendant makes two arguments on appeal. Defendant first argues that the trial court erred in referring to Emma as "the victim" during its jury instructions. Next, Defendant contends that the State's expert witness, the nurse who examined Emma, impermissibly vouched for Emma's credibility. We address each argument in turn.
 

 We note that Defendant failed to object to these alleged errors at trial and, therefore, failed to preserve his arguments on appeal. Thus, we review Defendant's arguments for plain error.
 
 State v. Bagley
 
 ,
 
 321 N.C. 201
 
 , 211,
 
 362 S.E.2d 244
 
 , 250 (1987). "Under the plain error rule, defendant must convince this Court not only that there was error, but that absent the error, the jury probably would have reached a different result."
 
 State v. Jordan
 
 ,
 
 333 N.C. 431
 
 , 440,
 
 426 S.E.2d 692
 
 , 697 (1993).
 

 A. Trial Court's Labeling of Emma as "the Victim"
 

 Defendant argues that the trial court erroneously expressed a judicial opinion by referring to Emma as "the victim" during its charge to the jury. We disagree.
 

 Defendant argues on appeal that the use of the term "the victim" in the jury instructions amounted to expression of a judicial opinion. An expression of judicial opinion is a statutory violation, and a "defendant's failure to object to alleged expressions of opinion by the trial court in violation of [a] statute[ ] does not preclude his raising the issue on appeal."
 
 State v. Young
 
 ,
 
 324 N.C. 489
 
 , 494,
 
 380 S.E.2d 94
 
 , 97 (1989). However, "where our courts have repeatedly stated that the use of the word 'victim' in jury
 
 *573
 
 instructions is not an expression of opinion," and the Defendant points to no other alleged instances of expression of judicial opinion, this issue is unpreserved.
 
 State v. Phillips
 
 ,
 
 227 N.C. App. 416
 
 , 420,
 
 742 S.E.2d 338
 
 , 341 (2013). Therefore, we review for plain error.
 

 It is well settled that when a "judge properly place[s] the burden of proof on the State[,]" referring to the complaining witness as "the victim" does not constitute plain error.
 
 State v. McCarroll
 
 ,
 
 336 N.C. 559
 
 , 566,
 
 445 S.E.2d 18
 
 , 22 (1994) ;
 
 see
 

 State v. Henderson
 
 ,
 
 155 N.C. App. 719
 
 , 722,
 
 574 S.E.2d 700
 
 , 703 (2003) ("[I]t is clear from case law that the use of the term 'victim' in reference to prosecuting witnesses does not constitute plain error when used in instructions[.]"). However, our Supreme Court has stressed that "when the State offers no physical evidence of injury to the complaining witnesses and no corroborating eyewitness testimony, the best practice would be for the trial court to modify the pattern jury instructions
 
 at defendant's request
 
 to use the phrase 'alleged victim'
 

 *515
 
 or 'prosecuting witness' instead of 'victim.' "
 
 State v. Walston
 
 ,
 
 367 N.C. 721
 
 , 732,
 
 766 S.E.2d 312
 
 , 319 (2014) (emphasis added).
 

 Here, it may have been the best practice for the trial court to "use the phrase 'alleged victim' or 'prosecuting witness' instead of victim' " during its charge to the jury.
 

 Id.
 

 However, a review of the trial transcript reveals that Defendant did not request such a change.
 

 Id.
 

 Moreover, the trial court properly placed the burden of proof on the State.
 
 See
 

 McCarroll
 
 ,
 
 336 N.C. at 566
 
 ,
 
 445 S.E.2d at 22
 
 . Thus, we conclude that it was not plain error for the trial court to refer to Emma as "the victim" in its jury instructions.
 

 B. Expert Vouching for Credibility of Complaining Witness
 

 Defendant also contends that the State's expert witness impermissibly vouched for Emma's credibility. As Defendant did not object to the expert's testimony at trial, we also review this argument for plain error.
 
 Bagley
 
 ,
 
 321 N.C. at 211
 
 ,
 
 362 S.E.2d at 250
 
 .
 

 It is well settled that an expert may not opine as to the credibility of a witness.
 
 State v. Heath
 
 ,
 
 316 N.C. 337
 
 , 342,
 
 341 S.E.2d 565
 
 , 568 (1986). For instance, an expert's testimony that a witness was
 
 in fact
 
 abused, absent physical evidence of said abuse, is inadmissible.
 
 State v. Grover
 
 ,
 
 142 N.C. App 411
 
 , 417,
 
 543 S.E.2d 179
 
 , 183,
 
 aff'd
 

 354 N.C. 354
 
 ,
 
 553 S.E.2d 679
 
 (2001). However, an expert may testify that an alleged victim's physical injuries are consistent with the victim's testimony.
 
 See
 

 State v. Aguallo
 
 ,
 
 322 N.C. 818
 
 , 822,
 
 370 S.E.2d 676
 
 , 678 (1988) (finding testimony that physical evidence was consistent with the alleged assault "vastly different from an expert stating on examination that the victim is 'believable' or 'is not lying.' "). Indeed, "otherwise admissible expert testimony is not rendered inadmissible merely because it enhances a witness's credibility."
 
 In re Butts
 
 ,
 
 157 N.C. App. 609
 
 , 617,
 
 582 S.E.2d 279
 
 , 285 (2003) (citing
 
 State v. Dick
 
 ,
 
 126 N.C. App. 312
 
 , 315,
 
 485 S.E.2d 88
 
 , 89 (1997) ("testimony based on the witness's examination of the child witness and expert knowledge ... is not objectionable because it supports the credibility of the witness[.]")).
 

 In the present case, the State's expert was a nurse who had interviewed and examined Emma. During her examination of Emma, Emma did not act distraught and she denied counseling. Further, the nurse testified that Emma showed no physical signs of penetration or other sexual contact. On re-direct, the expert testified that the lack of physical indicators was still consistent with someone who had been sexually assaulted, testifying as follows:
 

 *516
 
 STATE: Now, in your training and experience, was this a consistent - was - was her exam consistent with people reporting of sexual abuse?
 

 EXPERT: Yes.
 

 STATE: Okay. And [defense counsel] had asked you about the previous - different times you had actually examined other people in your training and experience, that they had had some physical findings; correct?
 

 EXPERT: Correct.
 

 STATE: But you just told us that her exam was consistent with someone reporting a sexual assault; correct?
 

 EXPERT: Correct.
 

 *574
 
 STATE: Can you explain that.
 

 EXPERT: Some patients who have been assaulted may not have physical findings or there may not be physical evidence to suggest an assault took place. Sometimes it - there could be physical findings and sometimes there is not.
 

 STATE: Okay. In - in the times that you have been doing this, for the years you have been doing this, how many times have people come in with physical - actual physical - cuts, abrasions, all of that, that report this kind of complaint?
 

 EXPERT: I can't really give a number, but it's less than those that do not have physical findings.
 

 STATE: So most that come that report being sexually assaulted, especially in the manner that she talked about ... don't present with physical findings like you are talking about?
 

 EXPERT: That's correct.
 

 STATE: And that's why this is consistent; is that right?
 

 EXPERT: That's correct.
 

 Defendant takes issue with these statements and likens them to those that have been found as inadmissible vouching.
 
 See
 

 State v. Keen
 
 ,
 
 309 N.C. 158
 
 , 164,
 
 305 S.E.2d 535
 
 , 538-39 (1983) (ordering a new
 
 *517
 
 trial where an expert went beyond the scope of the question asked and opined that "an attack occurred ... this was reality[,]" which amounted to an opinion as to the guilt of the defendant);
 
 see also
 

 State v. O'Connor
 
 ,
 
 150 N.C. App. 710
 
 , 712,
 
 564 S.E.2d 296
 
 , 297 (2002) (ordering a new trial where an expert's written report, which stated that the victim's disclosure "was credible[,]" was impermissibly admitted into evidence). In the present case, though, the State's expert did not explicitly state that Emma was in fact assaulted or that she was credible.
 

 The expert did, however, state that Emma's "exam was consistent with someone reporting a sexual assault[,]" solely on the grounds that she did
 
 not
 
 have physical evidence of sexual abuse. But we note that this lack of physical evidence observed by the nurse is also consistent with someone who has
 
 not
 
 been sexually abused.
 
 See
 

 State v. Towe
 
 ,
 
 366 N.C. 56
 
 , 61-64,
 
 732 S.E.2d 564
 
 , 567-69 (2012) (finding an expert's testimony to be improper where "she stated that the victim fell into the category of children who had been sexually abused but showed no physical symptoms of such abuse");
 
 see also
 

 State v. Frady
 
 ,
 
 228 N.C. App 682
 
 , 685-87,
 
 747 S.E.2d 164
 
 , 167-68 (2013) (holding expert testimony that the victim's disclosure was "consistent with sexual abuse" prejudicial). In other words, this portion of the expert's testimony - in which she affirmatively stated that a
 
 lack
 
 of physical evidence is consistent with someone who has been sexually abused - should not have been allowed, as this testimony did not aid the trier of fact in any way.
 
 See
 
 N.C. Gen. Stat. § 8C-1, Rule 702(a) (2017).
 

 Even if an opinion of the nature offered by the State's expert would be helpful to a jury, there is nothing in the record to indicate a proper basis for the nurse's opinion. Such testimony should generally be based on the science of how and why the human body does not always show signs of sexual abuse.
 

 Id.
 

 The nurse's testimony here was not based on any science or other medical knowledge she may have possessed. Rather, she based her testimony on her assumption that all of the people that she had ever interviewed and examined were telling the truth, that they had all been sexually abused.
 

 While it is impermissible for an expert to offer an opinion that a lack of physical evidence
 
 is consistent with
 
 sexual abuse, it may permissible for the State to offer expert testimony that the lack of physical evidence
 
 does not necessarily rule out
 
 that sexual abuse may have occurred. Such testimony might aid the trier of fact to understand that the lack of physical evidence does not necessarily mean that the defendant is not guilty. But again, here, there was nothing in the record to indicate that the nurse was qualified to give an opinion in this regard.
 

 *518
 
 As we find that the nurse's opinion testimony was improper, we must determine whether its admission had a prejudicial effect on Defendant's trial.
 
 Bagley
 
 ,
 
 321 N.C. at 211
 
 ,
 
 362 S.E.2d at 250
 
 . A prejudicial effect is one that, but for the error in question, "a different result would have been reached at the trial[.]"
 

 *575
 

 Frady
 
 ,
 
 228 N.C. App. at 686
 
 ,
 
 747 S.E.2d at 167
 
 (quoting N.C. Gen. Stat. § 15A-1443 (2017) ).
 

 Assuming that the trial court committed error by admitting the testimony without intervening
 
 ex mero motu
 
 , we conclude that any such error did not rise to the level of plain error. To be sure, Emma's testimony was the only direct evidence of Defendant's guilt. But the State elicited testimony from several other witnesses regarding the night and the event in question. Moreover, the nurse's testimony was
 
 not
 
 an expert opinion that Emma was telling the truth, which has been held in some cases to constitute plain error. Rather, the testimony was an expert opinion that a lack of physical evidence is consistent with sexual abuse. We cannot say that there is a reasonable probability that the jury assigned any great weight to this particular opinion as evidence corroborating Emma's testimony. We also cannot say that it is reasonably probable that the jury, using their common sense, did not understand that a lack of physical evidence can also indicate that no sexual abuse occurred. Certainly, it may be reasonably probable that a jury may find a complaining witness more credible where an expert testifies that the complaining witness is telling the truth.
 
 See
 

 O'Connor
 
 ,
 
 150 N.C. App. at 712
 
 ,
 
 564 S.E.2d at 297
 
 . But we conclude that it is not reasonably probable that the jury, here, found Emma's testimony more credible simply because the nurse stated that a lack of physical evidence is consistent with sexual abuse.
 

 III. Conclusion
 

 Judge Holt did not commit plain error when referring to Emma as the "victim" during its charge to the jury. And she did not commit plain error by failing to intervene
 
 ex mero motu
 
 and prevent the State's expert from testifying that a lack of physical evidence was "consistent with someone reporting a sexual abuse." Defendant received a fair trial, free from plain error.
 

 NO PLAIN ERROR.
 

 Judge ARROWOOD concurs.
 

 Judge BRYANT concurs in result only.
 

 [1]
 

 A pseudonym is used to protect the individual's identity.