IN THE COURT OF APPEALS OF NORTH CAROLINA

2021-NCCOA-349

No. COA20-139

Filed 20 July 2021

Robeson County, No. 15CRS053022

STATE OF NORTH CAROLINA

v.

SHANNON NICOLE CHAVIS, Defendant.

Appeal by defendant from judgments entered on or about 27 February 2019 by Judge James G Bell in Superior Court, Robeson County. Heard in the Court of Appeals 9 September 2020.

*Attorney General Joshua H. Stein, by Assistant Attorney General Kenzie M. Rakes, for the State.*

*Appellate Defender Glenn Gerding, by Assistant Appellate Defender Aaron Thomas Johnson, for defendant-appellant.*

STROUD, Chief Judge.

¶ 1        Defendant appeals judgments for her convictions of robbery with a dangerous weapon and conspiracy to commit robbery with a dangerous weapon. Defendant raises several arguments on appeal but after consideration of each issue, we conclude there was no error with these convictions. However, defendant was also found guilty of direct criminal contempt; as to the contempt order and judgment, we reverse.

**I.    Background**

¶ 2        The State's evidence tended to show that in May of 2015 defendant and her boyfriend entered Mr. Jones's home wanting his "gun and pills." Mr. Jones had previously dated defendant's mother. Defendant's boyfriend pinned down Mr. Jones, and they hit him with a stick. Defendant also tased Mr. Jones "two or three times" around the head and neck area. Defendant's boyfriend took Mr. Jones's wallet. As a result of the attack, Mr. Jones had blood coming out of his ear, a knot on his head, and a taser burn. Defendant was indicted for robbery with a dangerous weapon and conspiracy to commit robbery with a dangerous weapon. The jury found defendant guilty of both charges; the trial court entered judgments, and defendant appeals.

## II.    Use of Dangerous Weapon

¶ 3        During her trial defendant moved to dismiss the charges against her without giving any specific reason, and the trial court denied the motion. Defendant first contends that "[t]he trial court erred by denying" her "motion to dismiss because the evidence showed that the taser at issue was not a 'dangerous weapon[,]'" an essential element of both robbery with a dangerous weapon and conspiracy to commit robbery with a dangerous weapon. *See generally State v. Gwynn*, 362 N.C. 334, 337, 661 S.E.2d 706, 707-08 (2008) ("Under N.C.G.S. § 14–87(a), the essential elements of robbery with a dangerous weapon are: (1) an unlawful taking or an attempt to take personal property from the person or in the presence of another; (2) by use or threatened use of a firearm or other dangerous weapon; (3) whereby the life of a

person is endangered or threatened." (quotation marks and brackets omitted)); *see also State v. Lyons*, 268 N.C. App. 603, ___, 836 S.E.2d 917, 921 (2019), *disc. review denied*, 374 N.C. 744, 842 S.E.2d 592 (2020) ("To ultimately convict a defendant of conspiracy, however, the State must prove there was an agreement to perform every element of the underlying offense[.]" (quotation marks and brackets omitted)).

## A. Standard of Review

Though defendant did not state the reason for her motion to dismiss, "defendant's simple act of moving to dismiss at the proper time preserved all issues related to the sufficiency of the evidence for appellate review." *State v. Golder*, 374 N.C. 238, 246, 839 S.E.2d 782, 788 (2020).

> When a defendant moves for dismissal, the trial court is to determine whether there is substantial evidence (a) of each essential element of the offense charged, or of a lesser offense included therein, and (b) of defendant's being the perpetrator of the offense. If so, the motion to dismiss is properly denied.
>
> Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *In borderline or close cases, our courts have consistently expressed a preference for submitting issues to the jury, both in reliance on the common sense and fairness of the twelve and to avoid unnecessary appeals.*

*State v. Rivera*, 216 N.C. App. 566, 567-68, 716 S.E.2d 859, 860 (2011) (emphasis added) (citations and quotation marks omitted). Furthermore, "[t]his Court reviews

the trial court's denial of a motion to dismiss *de novo*. Under a *de novo* review, the court considers the matter anew and freely substitutes its own judgment for that of the lower tribunal." *State v. Southerland*, 266 N.C. App. 217, 219, 832 S.E.2d 168, 170 (2019) (citation and quotation marks omitted).

**B.      Analysis**

Defendant contends the taser was not a dangerous weapon. In *Rivera*, an assailant used a stun gun on the victim. *Rivera*, 216 N.C. App. at 567, 716 S.E.2d at 860. An officer testified during the defendant's trial that "the overall potential for serious physical injury or death from a stun gun is minimal, and the overall potential for serious physical injury or death from a stun gun would be consistent with being struck with a hand or foot." *Id.* (quotation marks and brackets omitted). The defendant in *Rivera* moved to dismiss the charge against him, robbery with a dangerous weapon. *See id.* The trial court denied the motion, and the jury found the defendant guilty of robbery with a dangerous weapon. *Id.* The defendant appealed, and this Court noted, "The dispositive issue in this case is whether there was sufficient evidence presented at trial to establish that the stun gun was a dangerous weapon that endangered or threatened [the victim's] life." *Id.* at 568, 716 S.E.2d at 860-61.

This Court explained,

> When deciding whether an object is a dangerous

weapon, our Supreme Court has stated:

> The rules are: (1) When a robbery is committed with what appeared to the victim to be a firearm or other dangerous weapon capable of endangering or threatening the life of the victim and there is no evidence to the contrary, there is a mandatory presumption that the weapon was as it appeared to the victim to be. (2) If there is some evidence that the implement used was not a firearm or other dangerous weapon which could have threatened or endangered the life of the victim, the mandatory presumption disappears leaving only a permissive inference, which permits but does not require the jury to infer that the instrument used was in fact a firearm or other dangerous weapon whereby the victim's life was endangered or threatened. (3) If all the evidence shows the instrument could not have been a firearm or other dangerous weapon capable of threatening or endangering the life of the victim, the armed robbery charge should not be submitted to the jury.
>
> We must look at the circumstances of use to determine whether an instrument is capable of threatening or endangering life.

*Id.* at 568–69, 716 S.E.2d at 861 (citations and quotation marks omitted).

¶ 7        In *Rivera,* this Court first determined that a stun gun can be a dangerous weapon. *Id.* at 569-570, 716 S.E.2d at 861-62. Here, we conclude that a taser is "what appeared to the victim to be a firearm or other dangerous weapon capable of endangering or threatening the life of the victim[.]" *Id.* at 568, 716 S.E.2d at 861. But since there was "some evidence that the implement used was not a firearm or

other dangerous weapon which could have threatened or endangered the life of the victim, the mandatory presumption disappears leaving only a permissive inference, which permits but does not require the jury to infer that the instrument used was in fact a firearm or other dangerous weapon whereby the victim's life was endangered or threatened." *Id.* at 571, 716 S.E.2d at 862. Further, in this case, the trial court instructed the jury it should determine whether a taser was a dangerous weapon, and thus we turn to the second rule described in *Rivera* "which permits but does not require the jury to infer that the instrument used was in fact a firearm or other dangerous weapon whereby the victim's life was endangered or threatened." *Id.* at 569, 716 S.E.2d at 861.

¶ 8      *Rivera* notes that "our courts have consistently held that an object can be considered a dangerous or deadly weapon based on the manner in which it was used even if the instrument is not considered dangerous *per se* and the weapon does not cause death or a life threatening injury." *Id.* at 571, 716 S.E.2d at 862. In *Rivera*, the victim "suffered significant pain from the shock, fell, and injured her rotator cuff. She endured two surgeries and extensive physical therapy. Two years after the robbery, Scott was still experiencing pain and a limited range of motion in her left arm." *Id.* at 570, 716 S.E.2d at 86. In fact, as noted in *Rivera,* "in *State v. Gay*, 151 N.C. App. 530, 566 S.E.2d 121 (2002), a stun gun was deemed as a dangerous weapon where the defendant did not actually use the stun feature but instead placed it

against the victim's neck in order to take her backpack. *Id*. at 570, 716 S.E.2d at 861-82.

¶ 9        Here, the evidence regarding the manner of use of the taser would permit the jury to find it was a dangerous weapon. After the attack, Mr. Jones was bleeding from his ear, had a knot on his head, and had a taser burn. Defendant argues that the bleeding and head injury were caused by her boyfriend "punching Mr. Jones or hitting him with the walking stick[,]" but defendant used the taser as Mr. Jones was being beaten and held by her boyfriend when he removed Mr. Jones's wallet from his pocket. In other words, defendant incapacitated, with the taser, Mr. Jones while he was being beaten, including on his head, to ensure he could not defend himself. The jury could conclude the taser was used as a deadly weapon. Accordingly, the trial court did not err in denying defendant's motion to dismiss. This argument is overruled.

### III.    Judicial Opinion

¶ 10        Defendant next contends that the trial court violated North Carolina General Statutes §§15A-1222 and -1232 by expressing the opinion that a taser was a dangerous weapon in its instructions to the jury. Defendant failed to raise this before the trial court but citing *State v. Johnson*, 253 N.C. App. 337, 801 S.E.2d 123 (2017), contends because it was a statutory violation it is preserved on appeal without objection and reviewable *de novo*. We agree. *See generally id.* at 345, 801 S.E.2d at

128 ("When a trial court acts contrary to a statutory mandate and a defendant is prejudiced thereby, the right to appeal the court's action is preserved, notwithstanding defendant's failure to object at trial. Defendant alleges a violation of a statutory mandate, and alleged statutory errors are questions of law and as such, are reviewed *de novo*." (citations, quotation marks, and brackets omitted)). We note defendant does not challenge the jury instructions or argue plain error for failing to object to the instructions but bases this argument on appeal solely on a statutory violation, and we address it accordingly.

"An expression of judicial opinion is a statutory violation and a defendant's failure to object to alleged expressions of opinion by the trial court in violation of a statute does not preclude his raising the issue on appeal." *State v. Davis*, 265 N.C. App. 512, 514, 828 S.E.2d 570, 572 (citation, quotation marks, and brackets omitted), *disc. review denied,* 372 N.C. 709, 830 S.E.2d 839 (2019). We review this issue *de novo. See Johnson* at 345, 801 S.E.2d at 128. North Carolina General Statute § 15A-1222 provides that "[t]he judge may not express during any stage of the trial, any opinion in the presence of the jury or any question of fact to be decided by the jury[,]" and North Carolina General Statute §15A-1232 similarly provides, "In instructing the jury, the judge shall not express an opinion as to whether or not a fact has been proved and shall not be required to state, summarize or recapitulate the evidence, or

to explain the application of the law to the evidence." N.C. Gen. Stat. §§ 15A-1222, -1232 (2019).

¶ 12      Specifically, defendant contends the trial court expressed its opinion at least twice by instructing,

> Robbery with a dangerous weapon. The defendant has been charged with robbery with a dangerous weapon, which is taking and carrying away the personal property of another from his person or in his presence without his consent by endangering or threatening a person's life with a dangerous weapon--in this case *it's a taser*--the taker knowing that she was not entitled to take the property and intending to deprive another of its use permanently[,]

and a similar statement in laying out the elements for feloniously conspiring to commit robbery with a dangerous weapon by noting it required finding "endangering or threatening a person's life with a dangerous weapon, in this case a taser[.]"

¶ 13      But defendant fails to note that in the next paragraph after the first robbery with a dangerous weapon instruction the trial court stated it was for the jury "to consider whether a taser is a deadly weapon[.]" Further, read in context it is clear the trial judge was noting the alleged weapon in question for the jury to consider was identified in the evidence as a taser, not that the taser *was* a dangerous weapon. It was the jury's duty to determine if there was a dangerous weapon used, and that consideration involved whether the taser was a dangerous weapon. This argument is overruled.

## IV.    Serious Bodily Injury

¶ 14    Defendant next contends the trial court committed plain error in failing to sufficiently instruct the jury on "serious bodily injury." Defendant admits this issue is unpreserved, and thus contends we review for plain error.

> As this Court and the Supreme Court have frequently stated, plain error consists of an error that is so fundamental that it undermines the fairness of the trial, or has a probable impact on the guilty verdict. In order to obtain relief on plain error grounds, an appealing party must show "(i) that a different result probably would have been reached but for the error or (ii) that the error was so fundamental as to result in a miscarriage of justice or a denial of a fair trial." Given that a prerequisite to our engaging in a plain error analysis is the determination that the trial court's ruling constitutes error at all we will initially determine if the trial court erred by denying Defendant's suppression motion and then ascertain whether any error committed by the trial court rose to the level of plain error.

*State v. Harwood*, 221 N.C. App. 451, 456, 727 S.E.2d 891, 896 (2012) (citations, quotation marks, and brackets omitted).

¶ 15    Here, the trial court defined "dangerous weapon" as "a weapon which is likely to cause death or serious bodily injury[.]" "Serious bodily injury" is not an element of robbery with a dangerous weapon or conspiracy to commit robbery with a dangerous weapon. *See generally Gwynn*, 362 N.C. at 337, 661 S.E.2d at 707-08; *see also Lyons*, 268 N.C. App. at ___, 836 S.E.2d at 921. Defendant argues that the "term 'serious bodily injury' has no commonly understood everyday meaning" but it does have "a

fairly well-settled legal meaning." Defendant notes several statutes where this term is defined for purposes of the crime defined by that statute. But "serious bodily injury" is not an element of the offense charged in this case. Instead, "serious bodily injury" was part of the trial court's instructions defining the required element of "dangerous weapon" to the jury. Defendant focuses on Mr. Jones's *actual* injuries but fails to address defendant's "likely", possible, or threatened injuries. As we have already discussed above, the taser here could be considered a dangerous weapon based upon its use to incapacitate Mr. Jones while he was being beaten. The State was not required to show Mr. Jones actually sustained "serious bodily injury" to show the taser was used as a dangerous weapon; the State need only show that the taser was used in a manner which "is likely to cause death or serious bodily injury." *See generally Rivera*, 216 N.C. App. at 568-70, 716 S.E.2d at 860-62. This argument is overruled.

## V. Ineffective Assistance of Counsel

¶ 16     Defendant next contends that she received ineffective assistance of counsel where her attorney conceded her guilt of common law robbery without her knowing and voluntary consent shown on the record. This assertion is simply not true, and we need not address this argument in detail. The record shows the trial court

conducted a *Harbison* inquiry[1] and directly asked defendant if she consented to her

counsel's concession that she was guilty of common law robbery:

> THE COURT:     All right. You heard [your attorney's] argument to the jurors?
>
> DEFENDANT:     Yes, sir.
>
> THE COURT:     And more or less, he argued that you were guilty of common law robbery and not the robbery with a dangerous weapon?
>
> DEFENDANT:     Yes, sir.
>
> THE COURT:     More or less conceding that you were guilty of something but not the most serious, right? Did you understand that?
>
> DEFENDANT:     Yes.
>
> THE COURT:     Okay. You and [your attorney] talked about that?
>
> DEFENDANT:     Yes.
>
> THE COURT:     He told you the good and the bad about doing that?

[1] "A *Harbison* inquiry regards the principle enunciated in *State v. Harbison*, 315 N.C. 175, 337 S.E.2d 504 (1985), in which the N.C. Supreme Court held that a counsel's admission of his client's guilt, without the client's knowing consent and despite the client's plea of not guilty, constitutes ineffective assistance of counsel. Accordingly, because of the gravity of the consequences of pleading guilty, an inquiry with defendant is conducted, which involves a thorough questioning of the defendant by the trial court in order to ensure that his decision to plead guilty is made knowingly and voluntarily after full appraisal of the consequences." *State v. Givens*, 246 N.C. App. 121, 126, 783 S.E.2d 42, 46 (2016) (quotation marks, ellipses, and brackets omitted).

> DEFENDANT: Yes, sir.
>
> THE COURT: He answered any questions you had about that?
>
> DEFENDANT: Yes.
>
> THE COURT: Are you satisfied with his legal services?
>
> DEFENDANT: Yes.
>
> THE COURT: And he did have your permission to concede that you were guilty of the lesser included of common law robbery when he made his argument to the jurors?
>
> DEFENDANT: Yes.
>
> THE COURT: All right. Have you got any questions?
>
> DEFENDANT: No.

¶ 17     Although the colloquy occurred after defendant's counsel's argument, defendant has not raised any argument on appeal regarding the timing of the trial court's inquiry and her answers indicate that her counsel had discussed the argument with her in advance of the argument. The transcript indicates defendant's knowing acquiescence to her counsel's concession of guilt to common law robbery based on the trial court's colloquy. Defendant does not direct us to any case law supporting her argument that a defendant must completely understand every feasibly theoretical

possible outcome, and demonstrate that via the record, or else her attorney has *per se* provided ineffective assistance of counsel by admitting to a lesser-included offense. This argument is without merit.

## VI. Contempt

Last, defendant contends the trial court erred in holding her in direct criminal contempt for refusing to put on the clothes provided for her because there was no finding of willfulness on her part nor did the trial court employ the required reasonable doubt standard.

> In criminal contempt proceedings, our standard of review is limited to determining
>> whether there is competent evidence to support the trial court's findings of fact and whether the findings support the conclusions of law and ensuing judgment. Findings of fact are binding on appeal if there is competent evidence to support them, even if there is evidence to the contrary. The trial court's conclusions of law drawn from the findings of fact are reviewable de novo.

*State v. Salter*, 264 N.C. App. 724, 732, 826 S.E.2d 803, 809 (2019) (citation omitted).

North Carolina General Statute § 5A-14(b) provides,

> Before imposing measures under this section, the judicial official must give the person charged with contempt summary notice of the charges and a summary opportunity to respond and must find facts supporting the summary imposition of measures in response to contempt. *The facts must be established beyond a reasonable doubt.*

N.C. Gen. Stat. § 5A-14 (2019) (emphasis added).

¶ 20          Here, the trial court's contempt order does not mention the standard of proof of beyond a reasonable doubt. The State directs us to *In re Owens*, 128 N.C. App. 577, 496 S.E.2d 592 (1998), *aff'd per curiam*, 350 N.C. 656, 517 S.E.2d 605 (1999), and contends when there is no factual determination for a trial court to make, it need not explicitly state that it used the standard of beyond a reasonable doubt. But more recently than 1998, our Court has taken a plain reading approach to North Carolina General Statute § 5A-14 and required a finding that the trial court did use the proper standard, reasonable doubt. *See State v. Ford*, 164 N.C. App. 566, 571, 596 S.E.2d 846, 849-50 (2004) (reversing order for direct criminal contempt because "[t]he only indication that the proper standard of review was applied was that he asked to review the statute before making his findings and that at the beginning of his findings, the boilerplate language of the order states 'after consideration of the applicable law.' We do not believe this sufficient to meet the requirement of *Verbal* that the findings should *indicate* that that standard was applied. Here, at best, the transcript indicates the judge may or may not have applied the proper standard, and there is no indication of the standard applied by the district court." (emphasis in original) (citation, quotation marks, and brackets omitted)); *see also In re Contempt Proceedings Against Cogdell*, 183 N.C. App. 286, 290, 644 S.E.2d 261, 264 (2007) (reversing direct criminal contempt order because "the trial court's order failed to

indicate that he applied the beyond a reasonable doubt standard to his findings as required by N.C.G.S. § 5A–14(b)"). Here, the transcript does not include any indication of the standard used, and the contempt order does not mention the standard of beyond a reasonable doubt, so we reverse the contempt order and judgment.

## VII. Conclusion

We conclude there was no error with the judgment and reverse the contempt order and judgment.

NO ERROR IN PART; REVERSED IN PART.

Judge COLLINS concurs.

Judge MURPHY concurs as to Parts I through IV and concurs in result only without separate opinion as to Parts V and VI.