IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA23-212

Filed 17 October 2023

McDowell County, Nos. 21CRS050486, 21CRS000336-37

STATE OF NORTH CAROLINA

v.

TOMMY LYNN BURLESON

Appeal by Defendant from judgment entered 3 May 2022 by Judge Peter B. Knight in McDowell County Superior Court. Heard in the Court of Appeals 20 September 2023.

*Attorney General Joshua H. Stein, by Special Deputy Attorney General G. Mark Teague, for the State-Appellee.*

*Shawn R. Evans for Defendant-Appellant.*

COLLINS, Judge.

Defendant Tommy Lynn Burleson appeals from the trial court's judgment entered upon guilty verdicts of drug-related crimes and having obtained habitual felon status. Defendant argues that the trial court erred by denying his motion to suppress and his motion to dismiss the substantive charges. The trial court did not err by denying Defendant's motion to suppress because the trial court's findings of fact resolved the material conflicts in the evidence and are supported by competent evidence, and those findings of fact support its conclusions of law. Furthermore, the

trial court did not err by denying Defendant's motion to dismiss because there was sufficient evidence from which the jury could find that Defendant constructively possessed the controlled substances. Accordingly, we find no error.

## I.    Background

On 6 April 2021, Defendant and Wesley Rogers were driving from Fairview Road towards Harmony Grove Road in a burgundy truck when they approached a driver's license checkpoint conducted by the McDowell County Sheriff's Department. Rogers was in the driver's seat, and Defendant was in the front passenger seat. McDowell County Sheriff's Deputy Robert Watson asked Rogers if he had a driver's license, and Rogers stated that he did not. Watson told Rogers to pull off into a thrift store parking lot where another officer would issue Rogers a citation.

As the citation was being issued, Watson approached the truck and spoke with Rogers and Defendant. Watson asked if either Rogers or Defendant were on probation; Rogers stated that he was on probation, and Defendant stated that he was not. Watson asked Rogers "if there was anything in the vehicle that was illegal that he should not have and for consent to search the vehicle." Rogers gave Watson verbal consent to search the truck. Watson directed Rogers to exit the truck and Watson conducted a pat down of Rogers for weapons.

Watson then directed Defendant to exit the truck. As Defendant was exiting the truck, Watson noted the odor of marijuana. Watson asked to conduct a pat down of Defendant, and Defendant consented. Defendant then began reaching into his

pocket, and Watson observed that Defendant's right hand was cupped. Watson asked Defendant to "open his hands up flat where [he] could see that there was nothing in them." Defendant turned away from Watson and "made a throwing motion with [his] right hand." At that point, Watson detained Defendant "for the safety of officers and other persons on and around the scene." Watson asked Defendant if he had thrown anything, and Defendant stated that he had thrown a marijuana blunt. Watson placed Defendant in front of his patrol car located behind the truck.

McDowell County Sheriff's Deputy Jonathan Carter watched Rogers and Defendant while Watson searched the truck. Watson discovered a small bag of a leafy green substance between the passenger seat and center console; a small bag of a leafy green substance in the top of the center console; and a bag of a white crystalline substance, which was confirmed to be approximately 38 grams of methamphetamine, underneath the center console. Watson advised Defendant that he was under arrest and placed him in the back seat of Carter's patrol vehicle. Defendant told Carter on the way to the magistrate's office that he and Rogers were going to pick up the drugs and sell them but asserted that the drugs belonged to Rogers.

Defendant was indicted for trafficking in methamphetamine by possession, trafficking in methamphetamine by transportation, possession with intent to sell or deliver methamphetamine, and for having obtained habitual felon status. Defendant filed a motion to suppress, alleging that "[t]he detention, questioning and search of the Defendant on the alleged date were conducted by law enforcement officers

- 3 -

without valid consent of the owner or any occupant of the vehicle and without reasonable suspicion[.]" After a hearing, the trial court denied the motion by written order entered 28 April 2022.

The matter came on for trial on 2 May 2022. At the close of the State's evidence, Defendant moved to dismiss the charges for insufficient evidence. The trial court denied the motion. The jury returned guilty verdicts on all charges, and the trial court sentenced Defendant to an active term of 117 to 153 months of imprisonment. Defendant appealed.

## II. Discussion

### A. Motion to Suppress

Defendant argues that the trial court erred by denying his motion to suppress. Specifically, Defendant argues that the trial court erred by failing to address conflicting testimony between him and Watson in its findings of fact.

We review a trial court's denial of a motion to suppress to determine "whether competent evidence supports the trial court's findings of fact and whether the findings of fact support the conclusions of law." *State v. Jackson*, 368 N.C. 75, 78, 772 S.E.2d 847, 849 (2015) (quotation marks and citation omitted). "When supported by competent evidence, the trial court's factual findings are conclusive on appeal, even where the evidence might sustain findings to the contrary." *State v. Hall*, 268 N.C. App. 425, 428, 836 S.E.2d 670, 673 (2019) (citation omitted). Unchallenged findings of fact are binding on appeal. *State v. Fizovic*, 240 N.C. App. 448, 451, 770 S.E.2d

717, 720 (2015). A trial court is only required to make findings of fact resolving material conflicts in evidence; a conflict is material if it affects the outcome of the suppression motion. *See State v. Bartlett*, 368 N.C. 309, 312, 776 S.E.2d 672, 674 (2015).

We review the trial court's conclusions of law de novo. *State v. Wiles*, 270 N.C. App. 592, 595, 841 S.E.2d 321, 325 (2020). Under de novo review, this Court considers the matter anew and freely substitutes its own judgment for that of the lower court. *State v. Biber*, 365 N.C. 162, 168, 712 S.E.2d 874, 878 (2011).

Here, the trial court made the following findings of fact:

> 8. The court finds the testimony of both Deputy Watson and Deputy Carter to be credible.
>
> . . . .
>
> 10. On April 6, 2021, the Defendant was a passenger in a vehicle driven by Wesley Rogers and that vehicle was stopped pursuant to a checkpoint . . . .
>
> 11. Deputy Watson operated the checkpoint according to the checkpoint plan . . . .
>
> 12. The driver, Wesley Rogers, acknowledged to Deputy Watson that he did not have a valid driver's license.
>
> 13. Deputy Watson asked Wesley Rogers to pull his vehicle over to the side of the road where they engaged in conversation about the search of the vehicle.
>
> 14. Deputy Watson asked if either Mr. Rogers or the Defendant were on probation, to which Mr. Rogers responded that he was, and the Defendant responded that he was not.
>
> 15. Wesley Rogers gave Deputy Watson verbal consent to search the vehicle.

16.   Mr. Rogers was asked to exit the vehicle and was patted down for weapons, which Mr. Rogers gave Deputy Watson consent to do.

17.  Due to the search of the vehicle, Deputy Watson asked the Defendant to exit the vehicle.

18.   At that time, Deputy Watson noted the odor of marijuana.

19.   The Defendant then consented to a search of his person.

20.   Deputy Watson observed the Defendant putting his hands into his garment pockets and that the Defendant's right hand was cupped.

21.  Deputy Watson asked the Defendant to open his hand and then the Defendant threw a marijuana blunt onto the ground.

22.   At that time, the Defendant was then detained by Deputy Watson for the safety of officers and other persons on and around the scene.

23.   The Defendant was then placed in front of Deputy Watson's patrol car.

24.   Deputy Watson then continued to search the vehicle pursuant to the consent given by Wesley Rogers.

25.   Marijuana was found in the vehicle as well as what appeared to be 38 grams of what appeared to be methamphetamine.

26.  At that point, Wesley Rogers was placed under arrest and contested his arrest and placement into custody. Mr. Rogers indicated that the drugs were not his and that he should not be arrested.

. . . .

28.  Deputy Carter came to the area where the Defendant was standing in front of the patrol car due to officer safety.

. . . .

30. Deputy Carter heard Wesley Rogers state that he had given consent to the search, allegedly, because "he did not

- 6 -

know the drugs were in there".

31. Deputy Watson advised the Defendant that he was being placed under arrest and then placed the Defendant into Deputy Carter's patrol vehicle.

32. On the way to the magistrate's office and without questioning from Deputy Carter, the Defendant made the statement to Deputy Carter that he and Mr. Rogers picked up the drugs and were going to sell them, but that the drugs belonged to Mr. Rogers.

33. However, Deputy Carter did not ask the Defendant any questions to elicit the above statement.

34. The Defendant testified that he heard the deputies ask Mr. Rogers for consent to search the pickup truck driven by Mr. Rogers and occupied by the Defendant.

35. The Defendant testified that Mr. Rogers never gave consent for the officers to search the vehicle, however the court finds his testimony to be noncredible.

36. Paragraph six of the affidavit filed December 6, 2021, signed by the Defendant under oath before the clerk of court, states "Defendant was made to exit the vehicle by Deputy Watson. Without consent of the Defendant, Defendant was patted down and searched by Deputy Watson. Defendant, as well as Wesley Adam Rogers were charged by Deputy Watson with multiple criminal offenses."

37. The testimony of the Defendant is contradictory to the sworn affidavit in that the defendant stated under oath at this hearing that he gave Deputy Watson consent to search his person.

Defendant does not challenge any findings of fact and they are thus binding on appeal. *See Fizovic*, 240 N.C. App. at 451, 770 S.E.2d at 720. Rather, Defendant argues that the trial court erred by failing to make additional findings of fact resolving conflicting testimony between Watson and himself.

Watson testified that he asked Rogers or Defendant if either were on probation and whether "there was anything in the vehicle that was illegal that he should not have and for consent to search the vehicle." Defendant testified that while he was still in the truck, Watson asked him, "Are there anything I need to know about in the truck?" Defendant argues that "[t]he trial court made no findings about this, making it impossible for this Court to properly analyze this issue to determine of (sic) Mr. Burleson was detained and whether he was questioned without a *Miranda* warning." However, the trial court found that Watson's testimony was credible and, in doing so, resolved any testimonial conflicts in Watson's favor. Moreover, even assuming arguendo that Watson asked Defendant whether there was "anything [he] need[ed] to know about in the truck[,]" neither Defendant nor Watson testified that Defendant made incriminating statements in response to this question. Rather, Defendant's statement that "he and Mr. Rogers picked up drugs and were going to sell them" was made spontaneously and without questioning from Watson after Watson had searched the truck. *See State v. Burton*, 251 N.C. App. 600, 607, 796 S.E.2d 65, 70-71 (2017) ("It is well established that spontaneous statements made by an individual while in custody are admissible despite the absence of *Miranda* warnings." (quotation marks, brackets, and citation omitted)).

The trial court's findings of fact resolved the material conflicts in the evidence and support the trial court's conclusions of law that "[t]he stop of the vehicle driven by Wesley Rogers and occupied by Tommy Burleson, the Defendant, was lawful" and

that "[t]he search of the vehicle by Deputy Watson was authorized and lawful." Accordingly, the trial court did not err by denying Defendant's motion to suppress.

**B. Motion to Dismiss**

Defendant argues that the trial court erred by denying his motion to dismiss because the State "failed to present sufficient incriminating circumstances which would have allowed a jury to make an inference of constructive possession."

We review a trial court's denial of a motion to dismiss de novo. *State v. Chavis,* 278 N.C. App. 482, 485, 863 S.E.2d 225, 228 (2021). "In ruling on a motion to dismiss, the trial court need determine only whether there is substantial evidence of each essential element of the crime and that the defendant is the perpetrator." *State v. Chekanow,* 370 N.C. 488, 492, 809 S.E.2d 546, 549 (2018) (quotation marks and citations omitted). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Rivera,* 216 N.C. App. 566, 568, 716 S.E.2d 859, 860 (2011) (quotation marks and citation omitted).

"In making its determination, the trial court must consider all evidence admitted, whether competent or incompetent, in the light most favorable to the State, giving the State the benefit of every reasonable inference and resolving any contradictions in its favor." *Chekanow,* 370 N.C. at 492, 809 S.E.2d at 549-50 (quotation marks and citation omitted). Any contradictions or discrepancies in the evidence are for the jury to decide. *State v. Wynn,* 276 N.C. App. 411, 416, 856 S.E.2d 919, 923 (2021).

Here, Defendant was convicted of possession with intent to sell or deliver methamphetamine pursuant to N.C. Gen. Stat. § 90-95(a)(1), and trafficking in methamphetamine by possession and by transportation pursuant to N.C. Gen. Stat. § 90-95(h)(3b). To convict a defendant of possession with intent to sell or deliver methamphetamine, the State must prove that the defendant (1) possessed, (2) methamphetamine, (3) with intent to sell or deliver methamphetamine. *State v. Blagg*, 377 N.C. 482, 489, 858 S.E.2d 268, 274 (2021). To convict a defendant of trafficking in methamphetamine, the State must prove that the defendant (1) knowingly possessed or transported methamphetamine, and (2) that the amount possessed was greater than 28 grams. *State v. Shelman*, 159 N.C. App. 300, 305, 584 S.E.2d 88, 93 (2003).

Possession of a controlled substance may be either actual or constructive. *State v. Nettles*, 170 N.C. App. 100, 103, 612 S.E.2d 172, 174 (2005); *see also State v. Diaz*, 155 N.C. App. 307, 313, 575 S.E.2d 523, 528 (2002). "A person has actual possession of a substance if it is on his person, he is aware of its presence, and either by himself or together with others he has the power and intent to control its disposition or use." *State v. Ferguson*, 204 N.C. App. 451, 459, 694 S.E.2d 470, 477 (2010) (quotation marks and citations omitted). "Constructive possession occurs when a person lacks actual physical possession, but nonetheless has the intent and power to maintain control over the disposition and use of the substance." *State v. Acolatse*, 158 N.C. App. 485, 488, 581 S.E.2d 807, 810 (2003) (quotation marks and citation omitted).

"Constructive possession depends on the totality of the circumstances in each case." *State v. Taylor*, 203 N.C. App. 448, 459, 691 S.E.2d 755, 764 (2010) (citation omitted). "Unless a defendant has exclusive possession of the place where the contraband is found, the State must show other incriminating circumstances sufficient for the jury to find a defendant had constructive possession." *State v. Miller*, 363 N.C. 96, 99, 678 S.E.2d 592, 594 (2009) (citation omitted). When determining whether other incriminating circumstances exist to support a finding of constructive possession, we consider, among other things: (1) "the defendant's ownership and occupation of the property"; (2) "the defendant's proximity to the contraband"; (3) "indicia of the defendant's control over the place where the contraband is found"; (4) "the defendant's suspicious behavior at or near the time of the contraband's discovery"; and (5) "other evidence found in the defendant's possession that links the defendant to the contraband." *Chekanow*, 370 N.C. at 496, 809 S.E.2d at 552 (citations omitted).

As Defendant did not have exclusive possession of the truck in which the drugs were found, the State was required to provide evidence of other incriminating circumstances. *Miller*, 363 N.C. at 99, 678 S.E.2d at 594.

When viewed in the light most favorable to the State, the following other incriminating circumstances were sufficient to support a finding of constructive possession: Watson testified at trial that, after Rogers gave consent to search the truck, he directed Defendant to exit the truck and asked for consent to conduct a pat

down. Defendant "gave consent and then he immediately began reaching in his pockets." Watson told Defendant to put his hands on the truck and noticed that Defendant's "right hand was in the cupped form folded over like he was trying to hide something." Watson asked Defendant to put his hands flat, and Defendant "turned away and made a throwing motion with his right hand and threw something."

At that time, Watson detained Defendant. Watson asked Defendant what he threw, and Defendant "stated that he threw a blunt." Watson placed Defendant in front of his patrol car and began searching the truck. Watson began his search on the passenger side of the truck and "located a small bag of marijuana, a very small bag of marijuana, on top of the center console area." Watson also found a "small bag of a green leafy substance, believed to be marijuana, that was in between the passenger seat and the center console area[.]" Furthermore, "underneath that console there was a plastic bag with a white crystal like substance that weighed out to be 38 grams believed to be methamphetamine."

Defendant's actions of cupping his hand, making a throwing motion with his back turned, and admitting to throwing a marijuana blunt, when viewed in conjunction with the subsequent discovery of marijuana and methamphetamine in the center console next to the passenger seat in which Defendant was sitting, constitute sufficient incriminating circumstances to support a finding of constructive possession. *See State v. Butler*, 147 N.C. App. 1, 12-13, 556 S.E.2d 304, 312 (2001) (holding that there were incriminating circumstances supporting an inference of

constructive possession where the defendant acted suspiciously by fleeing after seeing police, moving around like he was "struggling" at the location where the drugs were later found, and bending down "so that his arms and hands were not visible to the officers").

Accordingly, the trial court did not err by denying Defendant's motion to dismiss.

## III.  Conclusion

The trial court did not err by denying Defendant's motion to suppress because the trial court's findings of fact resolved the material conflicts in the evidence and are supported by competent evidence, and those findings of fact support its conclusions of law.  Furthermore, the trial court did not err by denying Defendant's motion to dismiss because there was sufficient evidence from which the jury could find that Defendant constructively possessed the controlled substances.  Accordingly, we find no error.

NO ERROR.

Judges TYSON and WOOD concur.